37 N.J. Super. 175 (1955)
117 A.2d 156
IN THE MATTER OF THE APPEAL OF THE CITY OF NEWARK, FROM THE ASSESSMENTS OF PROPERTIES IN THE CITY OF NEWARK, COUNTY OF ESSEX, FOR THE YEAR 1953, IVY HILL PARK SECTIONS ONE, INC., TO SECTION FIVE, INC., INCLUSIVE.
CITY OF NEWARK, PETITIONER-APPELLANT,
v.
DIVISION OF TAX APPEALS, RESPONDENT, AND IVY HILL PARK SECTIONS ONE, INC., TO SECTION FIVE, INC., INCLUSIVE, SITUATE IN THE CITY OF NEWARK, COUNTY OF ESSEX, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 30, 1955.
*178 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Vincent P. Torppey, corporation counsel, argued the cause for the appellant.
Mr. Morton Stavis argued the cause for the respondents (Messrs. Gross & Blumberg, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
These appeals are primarily concerned with two questions: First, whether certain consent judgments entered on appeals pending in the Division of Tax Appeals were properly authorized by the City of Newark, and second, whether the Division of Tax Appeals committed reversible error in denying the subsequent motion of the city to reopen them.
The record discloses that the five apartment buildings involved were in various stages of completion on October 1, 1952, the assessing date, and they were assessed as in the course of construction. Upon completion, they were revalued when the added assessment rolls were made up for 1953. Each building was appraised at $1,250,000 from the date alleged by the city to be the date of its completion.
The corporate taxpayers paid the taxes under R.S. 54:3-27 and appealed to the Essex County Board of Taxation where, after a full hearing on the merits, the true value of each building was reduced to $1,100,000. The portion of the year for which each one was assessed was also reduced.
On January 19, 1954, further appeals to the Division of Tax Appeals were filed by the owners. Thereafter on January 25 a meeting of the Board of Assessment and Revision of Taxes of the City of Newark was held. It was attended by all of the commissioners, including the president, Jack Slavitt. Representatives of the taxpayers also appeared and, according to the minutes, a discussion took place with respect to adjusting the differences represented by the pending appeals. After discussion, the board went into executive session and resolved to accept the county board valuations *179 but with the agreement that each building would be deemed completed for a longer portion of the year than was fixed by that board, except in one instance, where the same time period was retained. A motion was made and adopted (with one member dissenting) to put this decision into effect. Slavitt, the president of the board, voted in the affirmative.
Up to this time the city had not appealed from the action of the county board. Presumably because it was considered incongruous to enter consent judgments increasing the liability of the taxpayers in the pending appeals instituted by them to achieve a reduction thereof, it was decided that appeals should be taken by the city in the five cases and appropriate stipulations entered into before the Division of Tax Appeals to accomplish the desired result. The minutes contain a detailed statement of the stipulation to be made in each case. A representative of the taxpayers was recalled and advised of the proposal. He agreed thereto.
On this same day the city filed the petitions of appeal, all of them executed by Slavitt as president of the board of assessment and revision of taxes. And on January 29 a letter was written by the board to the then corporation counsel, advising him of the agreement in each case and instructing him to execute the necessary papers.
Six months elapsed before the consent judgments were obtained. On May 27, 1954 counsel for the taxpayers and for the city executed a formal stipulation in each case which set forth the agreement as to valuation and assessment period. Each stipulation was supported by an affidavit of Arthur Padula, an officer and owner of 50% (and possibly all) of the stock of each corporation, submitted presumably to meet the requirements of R.S. 54:2-42 for verification "by qualified experts as to the facts" alleged in the stipulation "in support of the valuations therein consented to." The five consent judgments were approved by the Division and entered on June 29, 1954.
The comparative effect of these judgments may be shown as follows:

*180
 State
 County board
 1953 city Portion board Portion consent Portion
 assessed of year assessed of year assessed of year
 value assessed value assessed value assessed
----------------------------------------------------------------------------
SECTION
ONE . . $1,250,000 3 mos. $1,100,000 2 mos. $1,100,000 3 mos.
----------------------------------------------------------------------------
SECTION
TWO . . $1,250,000 4 mos. $1,100,000 3 mos. $1,100,000 4 mos.
----------------------------------------------------------------------------
SECTION
THREE $1,250,000 6 mos. $1,100,000 4 mos. $1,100,000 5 mos.
----------------------------------------------------------------------------
SECTION Both sides
FOUR . $1,250,000 8 mos. $1,100,000 4 mos. withdrew appeals
----------------------------------------------------------------------------
SECTION
FIVE . $1,250,000 12 mos. $1,100,000 10 mos. $1,100,000 11 mos.
----------------------------------------------------------------------------

It will be observed that in each case, except the one wherein both sides withdrew their appeals and adopted the county board determination, the settlement resulted in acceptance of the conclusion of the county board as to true value and an increase over its determination of the portion of the year assessed. Furthermore, the additional period of assessment increased the taxable valuations substantially above those fixed by the county board.
On July 1, 1954 a new administration came into office in the city. In August, payment of the refunds arising out of the consent judgment was refused. However, no appeal was taken from the judgments nor was a motion made to reopen them.
In October 1954 an action in lieu of prerogative writ was commenced to compel payment of the refunds. Upon the filing of an answer, plaintiffs moved for summary judgment. It is clear from the record that the trial court considered himself bound by the judgments of the Division of Tax Appeals. However, he continued the motion to permit the city to apply to reopen or to vacate them.
Such a motion was made on January 6, 1955. The grounds therefor were: (1) that the corporation counsel had not been authorized by resolution of the governing body of the municipality to consent to the entry of the judgments, and (2) that *181 R.S. 54:2-42, regulating the entry of consent judgments by the Division, had not been complied with in certain particulars. Decision was reserved and on January 20 the motion was denied without opinion.
Thereafter the motion for summary judgment was renewed in the Law Division and granted. The city now appeals both from that judgment and from the refusal of the Division to reopen or to vacate the consent judgment. As we see the problem for our determination, unless the Division erred in refusing to reopen or to vacate the judgments, the action in the Law Division was proper.
There is no express statutory authorization for the Division to reopen or to vacate its judgments. However, discretionary power to do so exists by implication and the exercise thereof will not be interfered with by the courts unless the circumstances demonstrate a mistaken use of it. Air-Way Branches, Inc., v. Board of Review, 10 N.J. 609, 614 (1952); Heather Holding Co. v. Division of Tax Appeals, 36 N.J. Super. 195 (App. Div. 1955). Of course, the applicant for such relief must exercise reasonable diligence in seeking it. Handlon v. Town of Belleville, 4 N.J. 99, 106 (1950).
The city maintains that the former corporation counsel lacked authority to consent to the judgments because no resolution was adopted by the then board of commissioners authorizing him to do so. Most of its argument is devoted to the establishment of the contention that in the absence of such a resolution, the judgments cannot be considered binding and should have been reopened.
It appears that on July 22, 1953, the board of commissioners adopted a resolution that:
"Appeals to the State Board of Tax Appeals * * * shall be made in behalf of the City of Newark and the governing body, the Board of Commissioners, by and through Jack Slavitt, president of the Board of Assessment and Revision of Taxes, and the said Jack Slavitt be and he is hereby authorized to sign petitions of appeal, as aforesaid, in all cases for and in behalf of the City of Newark and the governing body thereof, and the Director of the Department of Revenue and Finance, and to do all things necessary concerning the filing and presenting of said tax appeals."
*182 Such a resolution seems to have been the practice in the city. Newark v. Van Wagenen & Schickhaus Co. (New Jersey State Tax Reports 1934-1939, at 456 (1937)); Art Metal Works, Inc. v. Newark (Id., at 474 (1937)). The record shows also that over a number of years the procedure with respect to the adjustment of tax appeals and the entry of consent judgments was the same as that pursued by the city in this instance. At the oral argument we were informed that such procedure is not followed by the new regime and that all formalities now argued as conditions precedent to the legal propriety of consent judgments are required.
If the judgments here are invalidated because of the absence of specific resolution of the board of commissioners, the colloquy before the Division of Tax Appeals indicates that a great many other such settlements may share the same fate.
In the view we have taken of the matter, it is not necessary to pass upon (1) whether the resolution was broad enough to confer upon Slavitt the authority to effectuate compromises of tax appeals instituted by him on behalf of the city, or simply empowered him to appeal if he felt it to be advisable in the interest of the city and then to act as a mere ministerial agent in handling the mechanics of the appeal; (2) whether the resolution is void because it contains a delegation of power without any standards to control its exercise, or whether by implication it carries with it the statutory limitation of true value (see New Jersey Bell Telephone Co. v. City of Newark, 136 N.J. Eq. 479 (E. & A. 1945); Consolidated Cigar Corp. v. Brunner, 133 N.J.L. 77 (Sup. Ct. 1945); R.S. 54:4-23); or (3) whether the settlement agreement made in form by the Board of Assessment and Revision of Taxes presided over by Slavitt, but consented to and voted for by him, constituted an exercise of the authority seemingly conferred on him as an individual to take and do all things necessary to present the appeals. See Daly v. City of New Brunswick, 3 N.J. 397, 400 (1950).
When the motion to reopen or to vacate the consent judgments was made, the city was required to show that *183 meritorious grounds existed in support of its appeal to the discretion of the Division.
More than six months passed between the consummation of the settlement agreement and the entry of the judgments. During this period, the board of commissioners which passed the Slavitt resolution was still in office. Nothing was done in the way of an attack on their legal propriety or to indicate dissatisfaction with them.
Five more months elapsed after the advent of the new administration before the motion was made to reopen or to vacate the consent judgments. And it was not done until a judgment was about to be entered in the action in lieu of mandamus to compel the delivery of the checks in payment of the tax refunds.
As already indicated, the Essex County Board of Taxation reduced all five of the assessments in question both as to valuation and period of assessment. Those determinations were presumptively correct. City of Trenton v. John A. Roebling Sons Co., 24 N.J. Super. 213 (App. Div. 1953); Schaffer Belts, Inc., v. Division of Tax Appeals, 1 N.J. Super. 35 (App. Div. 1948). With respect to the consummation of the agreement for the consent judgments between the taxpayers and Slavitt and the board of assessment and revision of taxes, no suggestion has been made that good faith was not exercised.
The consent judgments on their face (except for the one where the county board determination was acquiesced in) constituted an advantage to the city over the presumptively correct judgments. What was offered to the Division of Tax Appeals in the way of proof on the motion to reopen to show that the settlement was inequitable or unjust to the city? No affidavits were presented to indicate that the original assessments of its board were consistent with true value or even that those fixed by the county board did not conform to that criterion. Nor were affidavits or other proof submitted to show that the completion dates of the buildings involved were earlier than those fixed by the county board or agreed upon before the Division, and so the period of *184 assessment should have been longer. In fact, nothing was furnished to suggest that if the five appeals were fully tried in an adversary proceeding, the county board would or even might be reversed and higher valuations or longer periods of assessment adjudged.
On the other hand, when considering the motion the Division had before it the prima facie valid action of the county board and the affidavits of Padula which were accepted by the parties and the Division at the time the consent judgments were entered as a compliance with R.S. 54:2-42. These affidavits supported the county board valuation and the periods of assessment agreed upon by the parties. Reference to the schedule set out above indicates also that in two of the cases the settlement made adopted not the county board periods of assessment but the periods originally fixed by the city board of assessment.
On this phase of the problem therefore, we find no justification for a conclusion that the Division mistakenly used its discretion in declining to reopen the judgments.
The city claims, however, that the judgments were void because the conditions imposed by R.S. 54:2-42 for the approval by the Division of consent judgments were not complied with.
This statute provides:
"No judgment shall be entered by the Division of Tax Appeals * * * in any appeal from a county board, upon the oral consent or agreement * * *, but the division may enter judgment on such appeals, upon such proof and under such rules and regulations as it may from time to time prescribe, upon the written consents or agreements of the taxpayer and the * * * municipality * * * concerned, or their respective attorneys, verified by qualified experts as to the facts therein alleged in support of the valuations therein consented to."
The city challenges the sufficiency of the Padula affidavits which were submitted to meet the mandate of this act. Specifically it says no proof was furnished that Padula was a qualified expert and that no facts were alleged in support of the agreed valuations.
*185 The affidavit submitted in each case recited that Padula was a licensed real estate broker of this State, that he had knowledge of each building involved, and in his opinion its value was $1,100,000. Each one set forth also the amount for which the building had been assessed in its partial state of completion, the difference between that amount and the full value and the value for assessment purposes on the basis of completion for the period stated therein. The corporation counsel accepted these affidavits and submitted no independent expert proof.
There is no doubt that the Padula affidavits were sketchy and the Division, in pursuit of its duty under the statute, would have been entirely justified in requiring more detailed supporting proof. It must be kept in mind that the pertinent statutes, R.S. 54:4-23, provide but one basis for assessment of real property, namely, true value. Consequently the Legislature by R.S. 54:2-42 intended to impose on the Division the obligation of satisfying itself that the basic requirement for assessment is respected when settlements are made in pending tax appeals.
However, in studying the present situation, it will be recalled that the qualifications of an expert are left primarily to the discretion of the trial tribunal. Acceptance of them will not be overruled by an appellate court, if there is any evidence to support them. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950); Carbone v. Warburton, 11 N.J. 418 (1953).
Moreover, when a witness undertakes to give evidence as an expert, either orally or, when permissible, in affidavit form, and no objection is made to his competency, error cannot be based upon a claim of absence of proof of proper qualifications.
The city made no objection to Padula's qualifications and they were accepted by the Division. In reviewing the recognition of an expert by an administrative agency like the Division of Tax Appeals in the absence of objection to the qualifications we cannot overlook the fact that tax appeals are being heard constantly during which valuation experts *186 testify. Inevitably some of the experts become known to the members of the agency and it is entirely likely that in the absence of objection or a demand for evidence of qualifications, such experts are frequently permitted to testify without such introductory proof. Acquiescence therein by a party to the proceeding would bar attack on their competency on appeal. Moreover, examination of Padula's statement before the board of assessment during the negotiations for settlement shows substantial qualifications. While this was not repeated in the Division, it was undoubtedly available to and known by the corporation counsel.
Having in mind that the county board had fixed the valuations of these properties after full hearing, the presumption of correctness that accompanies them into the Division of Tax Appeals, the general statement of Padula in the affidavits, and the absence of objection by the city or submission of any contrary proof, it cannot be said fairly that there was no meeting of the conditions laid down by the Legislature for approval of the consent judgment. Consequently the action of the Division cannot be considered void.
The city, having failed to establish improper use of discretion by the Division in denying the motion to reopen or to vacate, the judgments remain in full force and effect. In this posture of the record, the Law Division was correct in granting summary judgment in favor of the plaintiffs.
Affirmed.