178 N.J. Super. 83 (1981)
428 A.2d 115
TOWNSHIP OF SPRINGFIELD, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
IRWIN WEINBERG AND YALE MANOFF, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1981.
Decided February 23, 1981.
*85 Gerard P. Hermann argued the cause for the appellant (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys; Edward J. Fanning, on the brief).
Richard J. Kaplow argued the cause for the respondents (Irwin Weinberg and Yale Manoff, pro se, on the brief).
*86 Before Judges ALLCORN, KOLE and PRESSLER.
The opinion of the court was delivered by PRESSLER, J.A.D.
The Township of Springfield appeals from a summary judgment entered by the former Division of Tax Appeals[1] dismissing its appeal from the judgment of the Union County Board of Taxation in respect of the 1977 assessment of the property in question by which it had increased the 1976 assessment thereof.
The first of the issues raised by this appeal is the applicability of the so-called Freeze Act, N.J.S.A. 54:3-26, to the judgment of the county board respecting the 1976 assessment of the property. The parties agree that if the Freeze Act applies, the assessment as stated in the 1976 county board judgment would not be subject to increase for the ensuing two years unless there was a subsequent change in the value of the property and, concomitantly, that if the Freeze Act does not apply, the assessor is not so constrained in respect of the 1977 assessment. Thus, the second issue raised by this appeal is the township's alternative contention that even if the Freeze Act does apply, a change in value sufficient to justify reassessment had occurred following the assessment date on which the 1976 county board judgment was based. The basis of the Division's action, here appealed from, was its conclusion that as a matter of law the Freeze Act did apply and that further there was no change in value.
The property in question is located in a split-use zone, that is, the front 233 feet are in a commercial zone and the rear 200 feet are in a residential zone. It was purchased by respondent taxpayers Irwin Weinberg and Yale Manoff at the end of 1973, the same year in which the township had completed its general revaluation for implementation in 1974. The property at the *87 time of the purchase was used for residential purposes, the improvements consisting of a two-family house and garage, and the revaluation assessment fixed its total value at $49,700, of which $22,700 was assigned to land and the balance of $27,000 to buildings.
The taxpayers had acquired the property with the intention of using it for commercial purposes. Their plan apparently was to clear the site and construct an office building thereon, and to this end they had arranged for the residential tenants to quit the premises. During the next two years they were, however, unable to commence physical implementation of their development plan because of their difficulty in securing the various municipal approvals, including variances, which they needed in order to go forward with their proposed commercial use. In the meantime, the residential building, not yet razed but unoccupied for a substantial period of time, had seriously deteriorated, had been vandalized and was finally gutted. These events apparently occurred prior to October 1, 1975, the valuation date for the 1976 assessment. N.J.S.A. 54:4-23. Accordingly, upon the assessor's refusal to grant assessment relief, the taxpayers appealed to the county board from the 1976 assessment, which had remained unchanged since the 1973 revaluation.
With respect to the 1976 appeal, the petition filed by the taxpayers with the county board recited the separate assessments of land, buildings, and the total thereof, and asserted that the fair building value was zero. They did not challenge the land assessment, repeating the $22,700 actual assessment figure as the assessment of the land which they considered just. Their request for relief, therefore, was a claim for reduction of the total assessment to eliminate the entire portion thereof attributed to buildings. The county board concluded that the improvements had substantially depreciated in value but were not completely without value, and consequently it reduced the building assessment from its original $27,000 to $7,000. Its formal certificate of judgment recited the original separate assessments of land and buildings, noted a remittance granted on the buildings *88 in the amount of $20,000, and by not referring to a remitted land value, affirmed, by implication, the original assessment thereof. It is nevertheless clear that the question of land value was never addressed by the parties, no proofs relating thereto were adduced, and it cannot in any sense be regarded as having been actually litigated.
The township did not appeal from the county board judgment respecting the 1976 assessment. It did, however, revise the assessment for 1977, and despite the absence of any intervening physical change of the property, increased the land assessment to $43,500 and reduced the building assessment to $2,000. It was the township's position that if the premises were no longer being used for residential purposes, they were then appropriately assessable at the higher land value applicable to commercial uses. The taxpayers again appealed to the county board, claiming that the Freeze Act prohibited the township from raising the land assessment. The township cross-appealed to the county board, asserting that despite the prohibition of the Freeze Act, there was nevertheless a change of value within its intendment justifying the increase. The county board dismissed the township's appeal and, on the taxpayers' appeal, reduced the land assessment to the amount stated in its judgment of the prior year. The township then appealed to the Division, which, on the taxpayers' summary judgment motion as aforesaid, sustained the taxpayers' claim to Freeze Act protection and agreed that no assessable change in value had occurred. We are satisfied that the Division of Tax Appeals did not err in either of these conclusions and, accordingly, we affirm.
N.J.S.A. 54:3-26, the Freeze Act, provides in pertinent part that
Where no request for review is taken to the tax court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the *89 changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.[2]
This provision reiterates the import of N.J.S.A. 54:2-43, providing a similar two-year freeze in respect of judgments of the Tax Court, formerly the Division of Tax Appeals.
The legal question, then, is whether the Freeze Act applies to the county board's judgment as a whole or only to that component thereof which was actually litigated. The township urges that although the Freeze Act clearly applies to the building assessment component of the 1976 county board judgment, it cannot apply to the land assessment component thereof since that component was never disputed and no proofs as to land value were ever before the county board. We disagree. For the reasons herein stated we are satisfied, as a matter of public policy and statutory construction, that a judgment of the county board complete and regular on its face is entitled to Freeze Act protection in all respects where one component, even if not both, of the total assessment is determined by the county board upon an adjudication on the merits.
The Freeze Act is not an expression of a res adjudicata principle of preclusion of subsequent litigation and does not, therefore, state a policy of repose in that sense. See Samuel Hird & Sons, Inc. v. Garfield, 87 N.J. Super. 65, 75 (App.Div. 1965). Rather, its purpose is to protect taxpayers from the harassment and, indeed, the retaliatory motivation of a municipal assessment practice which would permit arbitrary annual assessment increases requiring taxpayers to seek annual relief from the county board. As articulated by Newark v. Fischer, 8 N.J. 191 (1951),

*90 The evil which the "freeze" statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board. [at 199-200]
See, also, Hasbrouck Heights v. Div. of Tax Appeals, 41 N.J. 492, 498 (1964); Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166 (1954); Hamilton Garden Inc. v. Hamilton Tp., 45 N.J. Super. 124, 127 (App.Div. 1957). Thus, the Freeze Act represents a legislative policy decision not to permit an increase of assessment, absent a demonstrable change in value for the two tax years following the tax year for which the taxpayer appealed his assessment to the county board and the board entered an unappealed judgment fixing the assessment.
We recognize that the Freeze Act reference to the judgment of the county board is construable as denoting a "judgment on the merits of an appeal." See Hamilton Gardens, Inc. v. Hamilton Tp., supra. We also recognize that there may be some question as to whether a judgment of the county board based exclusively on the parties' consent constitutes a judgment on the merits for purposes of the Freeze Act. See In re Strauss, 28 N.J. Super. 526 (App.Div. 1953).[3] We have, however, no doubt that a judgment of the county board based at least in part on a fully litigated contest between the municipality and the taxpayer does constitute a judgment on the merits for Freeze Act purposes. We reach this conclusion because it is consonant with the policy of the Freeze Act.
*91 The assessment of real property is, despite its assignment of separate land and building values, essentially a unitary concept pertaining to total true value for purposes of imposition of an ad valorem tax. What is ultimately at stake to both the municipality and the taxpayer is the ultimate number of total tax dollars a single piece of real property, improved or unimproved, is accountable for. The petition of appeal and the form of county board judgment both require that the total assessment be addressed as well as each of its components, since the ultimate question of fact to be determined is the true value of such property as a whole. See Hackensack v. Rubenstein, 37 N.J. 37-39 (1952); Matawan v. Tree Haven Apts., Inc., 108 N.J. Super. 111, 115 (App.Div. 1969). The taxpayer appeals for purposes of achieving a reduction of the total assessment of his real property and hence a reduction of his total tax liability therefor. He may choose not to attempt to overcome the presumption of accuracy that attaches to value determination of the assessor as to one component of the assessment. See Riverview Garden, Section One v. North Arlington, 9 N.J. 167, 174 (1952). But by so attempting in respect of the other component thereof, he is surely challenging the assessment qua assessment in the same manner and to the same purpose as if he were challenging both components. And if he succeeds in obtaining a reduction of his total assessment on the basis of this challenge, we do not perceive how the policy of the Freeze Act would not be violated if the municipality, despite a county board judgment speaking to that total assessment, were permitted in the following year to increase the total assessment simply by increasing the undisputed component. To permit the municipality to so do would invite and encourage the very mischief of harassment and retaliation which the Freeze Act was designed to prevent. We regard it, moreover, as unnecessarily wasteful of time and expenses to require a taxpayer who only wishes to challenge one component of his assessment to nevertheless challenge both components and to introduce proofs as to a matter not in dispute in order to obtain Freeze Act protection for the revised total *92 assessment produced by his contested appeal to the county board. We are, therefore, persuaded that when these taxpayers obtained a judgment of the county board fixing their total assessment for 1976 at $29,700, the Freeze Act prevented the township from raising that total assessment to $45,500 for 1977 in the absence of an intervening change of value.
We do not quarrel with our dissenting colleague's observations that the value of land and improvements are required to be separately assessed; that where title to each is vested in different owners they may be separately billed, and that a taxpayer may appeal the assessment only on the land or improvements and need not appeal both. But it does not necessarily follow therefrom that adjudication on the merits of the valuation of both components of the real property owned by a single taxpayer must be made by the county board before the Freeze Act applies, since, for the reasons we have indicated, such a precondition to Freeze Act application would contravene its fundamental purpose. Moreover, the conclusion reached by the dissent would require an examination in every case to ascertain whether in fact the value of each of the components of the assessment was actually decided on the merits by the county tax board. In our view, that procedure would result in uncertainty, rather than stability, of assessments for the statutory period covered by the Freeze Act.
We are also satisfied that the Division of Tax Appeals correctly concluded that there had been no intervening change in value. There is no question but that the property had not been used for residential purposes for some time prior to the 1976 valuation date, and also that from the time of the taxpayers' acquisition of the property in 1973 they had intended an exclusively commercial use thereof. Neither the actual use nor the intended use nor the physical condition of the property changed materially after October 1, 1975. Thus, if there was a change of value based on a projected use change accompanied by an abandonment of the original use, that change predated the *93 litigated assessment date. Only "changes in value of the property occurring after the assessment date" are exempted from the protection of N.J.S.A. 54:3-26.
The judgment of the Division of Tax Appeals is affirmed.
ALLCORN, P.J.A.D. (dissenting):
For some years past and at the present time, in the assessment of real estate in New Jersey local assessors are enjoined to fix separately the "taxable value of the land and of the buildings and improvements ... on each parcel", and are further directed to set forth "the sum of such separate values as the assessed value of the parcel, and in such case the tax bill shall contain the separate valuations of land and of buildings and improvements." N.J.S.A. 54:4-26. Such method and procedure have been held to be entirely valid and proper, even to the extent of billing separately the land and the improvements where title to each was vested in different owners. See, e.g., Becker v. Little Ferry, 126 N.J.L. 338 (E. & A. 1941); Koester v. Bd. of Taxation, 79 N.J. 381, 392-393 (1979).
As a result of this method of assessment, it is commonplace for appealing taxpayers, [in taking appeals from local assessments] where so desired, to limit the appeal solely to the assessment against the land or the assessment against the buildings  and in the event the appeal challenges both, to address the land and the building assessments separately. Indeed, the prescribed form of the petition of appeal at the level of the county board is so designed that, among other things, the taxpayer is required to set forth separately the value at which the land was assessed and the value at which the improvements were assessed; he must also set forth thereon the amounts which he asserts represent the true value of the land and the true value of the improvements, where he challenges each assessment. In those instances in which the taxpayer challenges only the assessment of the land or the assessment of the *94 buildings, as here, he simply sets forth in the space for the alleged true value of the unappealed assessment the same amount at which the property was assessed  thus signifying that he is raising no challenge to such assessment and that he acquiesces therein. See, e.g., N.J.S.A. 54:3-21.
Following the filing of such petition of appeal, the county board is directed to "summarily hear and determine the appeal, and revise and correct the assessment in accordance with the value prescribed by law." N.J.S.A. 54:3-22. Under the Freeze Act, it is this determination of the appeal and the judgment issued thereon after the prescribed hearing and adjudication on the merits by the county board, that then become conclusive and binding upon the tax assessor for the year appealed and the two assessment years succeeding the year covered by the judgment  except, of course, where an appeal is taken from such determination to the State Tax Court, or except where there are some changes in value of the property occurring after the assessment date. N.J.S.A. 54:3-26.
From the foregoing, it is manifestly clear that, in order for the provision of the Freeze Act to become operative, there must be, first, an appeal of a disputed assessment, Newark v. West Milford, 9 N.J. 295, 304-305 (1952); and, second, an adjudication of such appeal on the merits. Equally plain is it that where there has been an appeal from only one of the assessments, be it land or buildings, and no appeal is taken challenging the other assessment, there is no issue or controversy as to the assessment not appealed, which thus goes unchallenged. Matawan v. Tree Haven, 108 N.J. Super. 111, 118-119 (App.Div. 1969); see, also, Riverview Gardens v. No. Arlington, 9 N.J. 167, 172-173 (1952).
It necessarily follows that where, as here, the taxpayers appealed only the building assessment for the year 1976 and took no appeal from the 1976 land assessment, there was not only no issue or controversy as to the true value of the land *95 submitted for determination by the county board, but there was no hearing thereon by the county board, no evidence received on the true value of the land and no determination on the merits by the county board fixing the true value of the land. In such circumstances, the county board literally has determined nothing with regard to the true value of the land and its judgment reflects this by treating only with the appeal filed as to the building. Indeed, the very terms of the Freeze statute itself speak only to "such appeals" as the county board "shall hear and determine," and makes "conclusive and binding" only those judgments of the county board entered upon such adjudicated determinations by it. Id. In short, absent hearing, determination and judgment on an appealed assessment, there is nothing upon which any freeze can be operative.
The petition of appeal and the judgment rendered in the instant cause for the tax year 1976 illustrate and support the foregoing views. Thus, the petition of appeal set forth in pertinent part, as follows:

 LAND BUILDINGS TOTAL
PRESENT
ASSESSMENT $22,700.00 $27,000.00 $49,700.00
ASSESSMENT
OWNER CONSIDERS
JUST $22,700.00 none $22,700.00
REQUESTED
REDUCTION $27,000.00 $27,000.00

From the foregoing, it is quite obvious that the taxpayers did not challenge and took no appeal from the assessment levied against the land.
The pertinent portions of the judgment of the Union County Board of Taxation after having heard and determined the appeal on the building, is as follows:

*96 UNION COUNTY BOARD OF TAXATION CERTIFICATE OF JUDGMENT
Appeal No. 174

 Owner Irwin Weinberg and Yale Manoff
 Assessed Valuation $22,700 on land $27,000 on bldg.
 Remittance granted $ $20,000 on bldg.

This certifies that the Union County Board of Taxation upon sufficient proof has corrected the assessment made upon the property known as 731 Mountain Avenue in the Township of Springfield for the year 1976 and has remitted the sum of $20,000 on bldg.
Surely, the simple clerical recitation of the amount of the original assessment against the land, for record purposes, does not and may not qualify as a judgment of the true value of the land, absent appeal on the land, absent a hearing thereon and absent a determination.
If any further support were necessary to demonstrate legislative intent, it is found in the provisions of N.J.S.A. 54:2-42, relating to the determinations of the State Division of Tax Appeals. By that statute, whenever following an appeal, the taxpayer and the taxing district agreed upon a settlement of the controversy, the Division was prohibited from entering any judgment fixing the settlement figure as the true value except "upon such proof and under such rules and regulations as it may from time to time prescribe, upon the written consents ... of the taxpayer and the taxing district ... concerned or their respective attorneys, verified by qualified experts as to the facts therein alleged in support of the valuations therein consented to." N.J.S.A. 54:2-42. By such legislation, it is clear that the Legislature intended that, even on the settlement of an appeal against a given assessment, the judgment issuing thereon must be supported by proof sufficient to satisfy the Division as to the correct amount of true value. In the face of this plain signal of legislative intent, it is difficult to conceive how the clerical recitation on the judgment form of the original assessed value of an assessment from which no appeal was taken may operate as a binding and conclusive judgment. While it is true that N.J.S.A. 54:2-42 was repealed with the advent of the legislation *97 creating the State Tax Court (N.J.S.A. 2A:3A-1, et seq.), substantially the same requirements for binding settlements of appealed assessments are imposed by the Rules Governing Practice in the Tax Court, promulgated by our Supreme Court. See R. 8:9-5, and comment 4 thereunder to the effect that the Rule "follows the former practice of the Division of Tax Appeals. The stipulation will require expert's affidavits and may require the affidavit of the assessor as well." See, also, Tax Court Forms P-Stip-1-79, P-Stip-2-79, and P-Stip-3-79, appended to Tax Court Rules, supra. The practice at the county board level requires a stipulation signed by the assessor and the municipal attorney, and signed by the taxpayer.
In sum, the Freeze Act (N.J.S.A. 54:3-26) is operative only upon a determination and judgment of the county board of taxation in a matter wherein the county board's jurisdiction to act attaches by way of an actual appeal of a challenged assessment, and the county board hears and determines the issue on the merits and enters an accordant judgment thereon. An adjudication on the merits of an appealable and appealed assessment is a sine qua non to the operative effect of the Freeze Act.
No brief is held for the action of the municipality here in what appears facially to be a retaliatory increase in the assessment on the land following the taxpayers' successful appeal on the building. The taxpayers, however, have their recourse and relief under the appeals procedures established by the statute (N.J.S.A. 54:3-21, et seq.). That recourse and relief does not lie in the unwarranted extension of the provisions of the Freeze Act to a determination never reached, in the name of policy. Whatever may be the policy of the Freeze Act, it is not the function of this court to attempt to achieve what it conceives to be that policy by disregarding fundamental doctrines of law and the statutorily mandated procedures.
Accordingly, I would reverse the action of the Division of Tax Appeals and remand the cause to the State Tax Court with directions to reinstate the 1977 land assessment at the value *98 assessed by the municipality and, thereafter, to remand the cause to the Union County Board of Taxation for a hearing on the merits and a determination fixing the true value of the land as of the assessing date for the tax year 1977 on the basis of the evidence of true value to be adduced at such hearing.
NOTES
[1] The functions of the Division of Tax Appeals were, by the 1979 amendment of N.J.S.A. 54:2-33, transferred to the Tax Court, created by N.J.S.A. 2A:3A-1 et seq., L. 1978, c. 33.
[2] N.J.S.A. 54:3-26 was amended by L. 1979, c. 499 to substitute the phrase "Tax Court" for the previous reference to the Division of Tax Appeals, n. 1, supra.
[3] As we noted in Rothman v. River Edge, 149 N.J. Super. 435, 440-441, n. 1 (App.Div.), certif. den. 75 N.J. 19 (1977), it would appear that final judgments entered by the former Division of Tax Appeals by consent pursuant to N.J.S.A. 54:2-42 would qualify for Freeze Act protection. See, also, Appeal of City of Newark, 37 N.J. Super. 175 (App.Div. 1955). We note that while N.J.S.A. 54:2-42 was repealed by the legislation abolishing the Division and creating the Tax Court, see L. 1979, c. 114, § 15, its import is now applicable to the Tax Court by virtue of R. 8:9-5. We perceive no reason why a consent judgment entered by the county board in conformance with its rules and practices should not be similarly entitled to Freeze Act protection.