EVERS, J. T. C.
On the basis of the county board of taxation freeze act, N.J.S.A. 54:3-26, plaintiff moved for an order seeking a reduction of the 1981 assessment of its real property to the level of a 1979 county board judgment pending the disposition of its complaint by which it seeks yet a lower reduction of the assessment on the basis of overvaluation and discrimination. Defendant, in opposition to the motion, claims (1) because the 1979 judgment was not a judgment “on the merits” it cannot serve as the basis of a “freeze”; (2) the freeze cannot be applied on an interim basis and (3) by electing the freeze act remedy the plaintiff is foreclosed from seeking a further reduction. The answers to these questions require a thorough review of the intent of the Legislature in adopting the freeze acts [1] and of the statutory language employed to achieve its objective. Not to be forgotten during the course of such review is N.J.S.A. 54:2-39, which requires the payment of taxes then due (on the basis of the assessment then in effect) when taxpayer filed its complaint. The pertinent undisputed facts follow.
Plaintiff, the largest taxpayer in the borough, filed appeals to the Division of Tax Appeals for the years 1974 through 1978 seeking a reduction of its assessment of $28,928,900. Pursuant to a stipulation of settlement, the assessments for each year were reduced to $20,928,900. In entering into the stipulation, which was confirmed on May 30, 1979, the borough further agreed to reduce the $46,726,000 1979 assessment to $38,660,400. A revaluation was effective for the 1979 tax year.
*72 It was further agreed that the assessments for 1980 and 1981 would be maintained at $38,660,400 unless there was a substantial change in the land area or physical facilities which formed the basis for the improvement portion of said assessment. The agreement provided that taxpayer would seek no reduction of the 1980 or 1981 assessments unless the tax rate for either year exceeded the rate for the immediate preceding year by more than 10%. Such increases came to pass and taxpayer filed direct complaints for both years to the Tax Court seeking reductions of the assessments on the basis of overvaluation and discrimination. An answer and counterclaim were filed with respect to the 1980 matter. See Curtiss Wright Corp. v. Wood-Ridge, 2 N.J.Tax 143 (Tax Court 1981).
Pursuant to the settlement agreement, the Bergen County Board of Taxation entered judgments for all years, including 1979, in accordance with the stipulated amounts. The 1979 judgment was entered in June of that year. None of the judgments, of course, were appealed.
For 1980 the assessment was maintained at the 1979 judgment level of $38,660,400. In 1981 the assessment was increased to $46,726,000, which was the precise figure of the original 1979 assessment prior to the entry of the consent judgment before the county board. Taxpayer paid the taxes then due and brought the 1980 and 1981 actions.[2] It is the payment of the additional taxes for 1981 which resulted from the assessment increase of $8,066,000 that prompted this motion in which taxpayer alleges that such increase was in violation of the language and underlying philosophy of the freeze act.[3]
N.J.S.A. 54:3-26, in pertinent part, provides:
*73 Where no request for review is taken to the Tax Court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
The freeze act is self-executing and must be applied absent the two exceptions provided in the act, i.e., change in value and/or revaluation. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 110 A.2d 110 (1964). However, the self-executing feature of the act will not apply where the judgment for the base year (herein 1979) becomes final subsequent to the assessment date(s) for the freeze year(s).[4] See Wayne Tp. v. Robbie’s, Inc., 118 N.J.Super. 129, 286 A.2d 725 (App.Div.1972), certif. den. 60 N.J. 351, 289 A.2d (1972), and Hudson Terrace Apartments v. Fort Lee, 2 N.J.Tax 457 (Tax Court 1981). In such case there is no assessment ceiling to which the assessor must adhere, and he may, pursuant to N.J.S.A. 54:4-23, set the assessment “at such price, as in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 [of the pretax year]. . . . ” In such instances it is necessary for the property owner to affirmatively seek the application of the freeze act.
*74 Where, however, such judgment final is entered prior to the freeze year assessing date the situation differs. In Edge-water v. U. S. Life Realty Corp., 2 N.J.Tax 421 (Tax Court 1981) it was held:
In such instances the self-executing feature of the act requires that an assessment, identical to the base year judgment amount, be levied for the freeze years. If, in the judgment of the taxing district, the value of the property has changed in a freeze year the taxing district must file a complaint, [at 423]
Here the situation is identical to that found in Edgewater; a judgment final existed prior to October 1, 1980 (the freeze year assessing date); a freeze year assessment was increased over the base year judgment amount, and no “petition of appeal . . . specifically setting forth the nature of the changes relied upon as the basis for such appeal,” pursuant to N.J.S.A. 54:3-26, was filed. In Edgewater the court found that the taxing district’s failure to file a complaint seeking an increase in the freeze year assessment foreclosed it from even attempting to prove a change of value on the property owner’s freeze act application.
It is clear that borough violated the procedural requirements of the freeze act. The self-executing feature mandated that the 1981 assessment be identical to the 1979 assessment which was based on the county board judgment. Therefore, unless borough can show that the' freeze is inapplicable to this situation, taxpayer’s motion must be granted.
Borough’s argument, that the freeze act cannot apply to a consent judgment because it is not based on the merits, presents an issue that, until the recent decision in South Plainfield v. Kentile Floors, Inc., 4 N.J.Tax 1 (Tax Court 1982), has never been fully articulated or resolved in any reported decisions. Many reported cases, including Edgewater v. U. S. Life Realty Corp., supra, concerned the application of the freeze where the judgment was based on consent but the specific question of whether such judgment could support a freeze was never raised. In Rothman v. River Edge, 149 N.J.Super. 435, 374 A.2d 36 (App.Div.1977), the court, in a footnote observed:
Indeed, we are not all certain that a “final judgment” within the contemplation of the Freeze Act (N.J.S.A. 54:2-43) may not rest upon a settlement alone, when accompanied by the safeguards prescribed in N.J.S.A. 54:2-42, *75 namely “the written consents or agreements of the taxpayer and the taxing district ... concerned, or their respective attorneys, verified by qualified experts as to the facts therein alleged in support of the valuations therein consented to." [at 440-441, n. 1, 374 A.2d 36] [5]
In Riverview Gardens, Section One, Inc. v. North Arlington, 9 N.J. 167, 87 A.2d 425 (1952), local property taxpayers sought application of the freeze act to 1949 judgments of the county tax board as affirmed by the Division of Tax Appeals. The county board judgments were based upon a freeze of earlier county board judgments concerning the tax year 1947. The Division of Tax Appeals, in affirming the 1949 county board determinations, considered only the question of whether the taxing district was bound for the tax year 1949 by the county board judgments for the tax year 1947. The Supreme Court refused to apply the freeze act to the 1949 judgments and thus extend the freeze of the 1947 judgments to 1950. The court reasoned as follows:
The base “assessment year” and “assessing date” specified in the statute are necessarily those at which the last true valuation of the property was determined by the assessor on the merits. The record is clear that in this case that assessment year for which such a determination was made was the 1947 assessment year. The action of the county board and that of the Division of Tax Appeals were mere adjective determinations that the 1947 assessment controlled for the assessment years of 1948 and 1949, and were thus determinations that no new assessment should have been attempted, [at 173, 87 A .2d 425]
In South Plainfield v. Kentile Floors, Inc., supra, in construing the language of Riverview Gardens, supra, the court reasoned:
When seen in context, it becomes apparent that the Court’s reference to the base assessment year as the last year in which the value of the property was determined by the assessor “on the merits,” was meant to distinguish the situation in which a valuation was arrived at merely by freezing a prior year’s assessment. The “adjective determinations” referred to by the Court were judgments based on applications of the Freeze Act. The Court did not, as plaintiff herein maintains, attempt to limit Freeze Act protection to judgments based upon evidentiary hearings, thereby precluding application of the act to *76 judgments based upon stipulations of settlement. The Court’s intent was solely to avoid application of the act to a judgment that itself was based upon an application of the Freeze Act. [at 7]
The same intent is apparent in In re Strauss, 28 N.J.Super. 526, 101 A.2d 22 (App.Div.1953). See, also, Hamilton Gardens, Inc. v. Hamilton Tp., 45 N.J.Super. 124, 131 A.2d 559 (App.Div.1957). It thus becomes apparent that the concern of both the Legislature and the court, in equating a “judgment final” with a “judgment on the merits,” was to avoid application of the freeze to judgments that were themselves based on a judgment issued pursuant to the freeze act.[6]
As earlier noted, the Rothman court suggested that a freeze act judgment might rest on a settlement alone when accompanied by the safeguards prescribed in N.J.S.A. 54:2-42. In South Plainfield the argument was made that, notwithstanding the repeal of N.J.S.A. 54:2-42,[7] Tax Court Rule 8:9-5 incorporates its terms in all respects. R. 8:9-5 provides: “Judgment in a local property tax matter may be entered upon stipulation of the parties supported by such proof as the court may require.” N.J.S.A. 54:2-42 had required verification of the settlements (consents) by qualified experts. The Comment to the rule states:
R. 8:9-5 follows the practice of the Division of Tax Appeals. This stipulation will require experts’ affidavits and may require the affidavit of the assessor as well. Pressler, Current N.J.Court Rules, Comment R. 8:9-5.
The court rejected that argument and found that discarded, enumerated statutory language cannot be retained in the face of a conscious decision to eliminate the specific requirement for affidavits of experts and assessors. The court stated:
This argument is all the more persuasive in light of the numerous statutory amendments adopted with the creation of the Tax Court in which references to *77 the Division of Tax Appeals were simply replaced with references to the Tax Court. See, e.g., NJ.S.A. 54:2-47, 37, 38, 40, 43. Had the intent been to retain NJ.S.A. 54:2-42 in full force in the Tax Court, a simple amendment of the statute, rather than its repeal, seems the logical procedure. In any event, NJ.S.A. 54:2-42 reflected a concern that stipulations of settlement be fair, and reflect fair assessable values. The repeal of the statute and the adoption of R. 8:9-5 invests the Tax Court Judge with the responsibility of overseeing settlements. In his discretion the judge may require exj>erts’ and assessors’ affidavits, as well as any other form of proof, prior to the direction of the entry of a judgment pursuant to settlement. R. 8:9-5 does not require affidavits prior to the entry of judgment nor does it preclude the application of the Freeze Act to such a judgment. [4 N.J.Tax 1, supra at 9] [8]
Furthermore, an interpretation of the statutory language compels a recognition of the dual roles played by county boards. In its administrative role it serves as a supervisor of assessors and of the tax list. As a quasi-judicial body it hears tax appeals. N.J.S.A. 54:3-13, N.J.S.A. 54:4-46 and N.J.S.A. 54:4-47 relate to the board’s administrative duties in supervising assessors administratively and in reviewing and certifying the municipal tax lists. Having accomplished those tasks (manifested by the certification of the tax lists no later than May 13 pursuant to N.J.S.A. 54:4-55), the board then assumes the mantle of a quasi -judicial body in hearing tax appeals. It thus affords aggrieved taxpayers (and taxing districts which may file appeals from its own assessments) a forum in which their complaints will be heard and decided. Clearly, it is only in its quasi-judicial capacity that it enters judgments and it is only “judgments” that will “freeze” assessments. Therefore, whatever the Legislature envisioned in using the language, “to review the action or determination of the county board,” it was *78 clear that such actions or determinations must have been undertaken and made in performance of its quasi-judicial functions. A determination clearly involves a decision.[9] If by “determination” the Legislature meant “a decision concerning a controversy” upon which a judgment is based, what, then, was the Legislature’s purpose in the use of the word “action”?
It may be argued that because the freeze is applied to judgments and that because judgments are based on determinations it is implied or inferred that the words are synonomous. When a court is asked to construe a statute on the basis of an inference or implication the preferred construction must demonstrate that what is purportedly implied is done so in a clear fashion. Juzek v. Hackensack Water Co., 43 N.J. 302, 225 A.2d 335 (1966), and Giles v. Gassert, 23 N.J. 22, 127 A.2d 161 (1957). To treat these terms as being synonymous is not only to ignore the disjunctive “or” but also to ignore the principle that in construing a tax statute significance must be ascribed to clearly intelligible and declaratory words of the statute and it must be assumed that they were used purposefully. Wilentz v. Hendrickson, 133 NJ.Eq. 447, 33 A.2d 366 (Ch. 1943) aff’d 135 NJ.Eq. 244, 38 A.2d 199 (E. & A. 1944).
The Legislature’s deliberate use of the word “action” therefore clearly suggests that it was intended to mean such deeds, accomplishments and proceedings performed in its quasi-judicial capacity, other than determinations, which culminate in judgments. In this quasi -judicial capacity, the board shall, pursuant to N.J.S.A. 54:3-22, “hear and determine [real property] tax appeals” and, pursuant to N.J.S.A. 54:3-26, shall do so within three months after the last filing date for such appeals. If that mandate were taken literally it would, at the very least, be a most formidable accomplishment for a county board to hear “on *79 the merits” and determine all such appeals within three months.[10]
Once filed, appeals are disposed of in one of three ways, i.e., hearing and determination, settlement and withdrawal. A withdrawal can, in no wise, be included in the words “action or determination” as used in the statute. A withdrawal entails no action by the board because nothing is left upon which the board may act. On the other hand, while a settlement of a pending action is something less than a “hearing and determination,” it is much more than a withdrawal. It demands an action by the county board — a review of the settlement or a taking of testimony in settlement of the appeal, a filing of the stipulation, the entry of a judgment thereon. It requires an action, albeit not a hearing and not a determination, by the county board in its quasi-judicial capacity.
The conclusion that this interpretation was intended by the Legislature is supported by a close reading of the statute itself. It is significant to note that neither freeze act statute contains language that would limit the application of the freeze to those judgments entered only after a hearing of the merits of the appeal. If the Legislature had so intended, it would have been a relatively simple matter to provide in each act that only judgments on the merits would invoke the freeze. But the Legislature provided, without qualification, that the protective shelter of the freeze should extend to all judgments.
This construction of the act is supported by even more compelling reasons when one carefully, yet practically, scrutinizes the purposes of the act. Is it reasonable to assume that the Legislature intended that only those taxpayers who tried their cases to completion would escape the harassment, the retaliatory motivation, the time, expenses and trouble, that would ensue without freeze act protection? Put another way, it cannot be reasonably assumed that it was the intent of the Legislature to exclude *80 from freeze act protection those taxpayers who, immediately prior to the end of a trial, enter into a settlement of the issues, or those taxpayers who, without benefit of any trial proceedings whatsoever but with the expenditure of considerable time, effort and expense, amicably dispose of the disputes.
A contrary conclusion would not only do violence to the purposes of the freeze act but would also contravene the principle that the law encourages settlements of disputes and favors consent judgments. Jannarone v. W. T. Co., 65 N.J.Super. 472, 168 A.2d 72 (App.Div.1961), certif. den. 35 N.J. 61, 171 A.2d 147 (1961); Newark’s Appeal, 37 N.J.Super. 175, 117 A.2d 156 (App. Div.1955). It is obvious that the strict application of the freeze act, as argued by the borough, would discourage settlement because only those taxpayers who tried their appeals to conclusion would receive the three-year benefit of the act. In that case the taxpayer who may have achieved an equal or even greater victory through settlement and a consent judgment would have no alternative but to, once again, institute proceedings in order to preserve the status quo in the immediate succeeding year. This conclusion is in keeping with the obvious overriding purpose of the act, which is to prevent harassment of all taxpayers whose claims had been reduced to a judgment final and not just to those whose cases have been tried to a conclusion on the merits.
A municipality is not at any disadvantage concerning the freeze act when it settles a local property tax appeal. Taxpayers’ counsel have no superior bargaining power in tax appeal negotiations. If anything, the municipality is at an advantage for it retains the taxpayer’s money throughout the appeal process. In addition, municipal attorneys are free to negotiate settlements in such a way as to avoid the application of the freeze or lessen its effect. In any event, a stipulated settlement does not automatically bind the town for the two years following the judgment. If a change in value occurs, the town is free to establish that fact and avoid the operation of the statute. Substantially the same protections exist for a munici *81 pality whether a base year judgment is founded on a factual hearing or on a stipulation of settlement.[11]
This finding also effectively disposes of borough’s argument that the agreement was rendered void by virtue of taxpayer’s appeal. This argument is based on that portion of the agreement which provided that in the event of a more than 10% tax rate increase, the taxpayer was free to appeal the 1980-1981 assessments “as if the agreement had not been entered into.” The contingencies having occurred, according to the borough the agreement was not final and therefore the judgment was not final. To accept this argument would wreak havoc with the administration of the judicial system in that it would require the Tax Court and county boards to investigate into the underlying basis of all settlement agreements on which consent judgments are issued. Undoubtedly, the framers of the pertinent legislation foresaw the difficulty in examining into each judgment in order to determine whether it adequately supported a finding of true value. If each agreement were to be open to scrutiny by the Tax Court and county boards it is fairly obvious that this would all but nullify the pragmatic purpose for which the freeze act was enacted. When such agreements are entered into, they should be reviewed by the parties with full recognition of the effect of the freeze act. Stability in assessments would be nonexistent.
Nor does this conclusion place an onerous burden on the borough. Assuming, as the borough argues, that the 1979 settlement figures represent a “compromise” and not the true value of the property, the assessor could have, and should have, *82 filed a complaint specifically alleging the facts in support of that position with the county board. He chose not to do so but instead, contrary to the freeze act procedural requirement, simply increased the 1981 assessment by approximately 20%.[12]
In view of the foregoing I find that the conclusive and binding effect of judgments, as contemplated by the freeze act, includes “consent” judgments. That finding does not dispose of the matter, for still to be resolved is the question of whether the 1981 assessment may b,e frozen on an interim basis while the taxpayer pursues its claim for a reduction of the frozen assessment.
While it may be argued that the principle of stability of assessments, as well as election of remedies, militate against an affirmative finding, those arguments evaporate when the facts of this matter are viewed in proper perspective in terms of the freeze act. In that posture I find that the purpose of the freeze act would still be defeated if taxpayer’s application was denied. Had the taxing district observed the freeze act procedural requirements in the first instance, stability of assessments would not be threatened and this taxpayer would not have been confronted with any election and, in fact, this motion would have been unnecessary.
The court first notes that neither freeze act statute expressly prohibits a taxpayer from further seeking a reduction in the assessment resulting from the application of the freeze. In short, on their face, the acts do not impose on the taxpayer an election. There is no language, except that language dealing with the exceptions which would act to avoid the freeze, that even attempts to control the actions of a taxpayer during the freeze period. To the contrary, the clear intent of the Legisla *83 ture was to make the base year judgment “conclusive and binding upon the municipal assessor and the taxing district” only. If it had intended otherwise, the word “taxpayer” would have been included. In recognition of the fact that each taxpayer has the right to contest his assessment annually, and in further recognition that harassment results from arbitrary assessments by the taxing district and not from appeals by taxpayers, the Legislature saw fit only to bind the assessing authorities to the judgment and not to foreclose the taxpayer from his right of appeal.
Furthermore, in light of the intent of the freeze act, it must be recognized that under the factual situation presented here, this taxpayer was not actually confronted with a classic election of remedies dilemma. The benefits of the freeze accrued to it as a matter of right; all required elements for application of the freeze were present and satisfied. Taxpayer should not be confronted with a forfeiture of that right in order to exercise its right of appeal. A contrary holding presents this taxpayer not with a choice of remedy but with an election of which right it should pursue.
To hold, under these circumstances, that the right to invoke the freeze and the right to continue to pursue an appeal cannot coexist would serve to defeat the very purpose of the freeze act. Lest we forget, it was the arbitrary increase of the assessment without first filing a complaint by the taxing district that created the problem in the first instance. In taking this action the taxing district has forced taxpayer to affirmatively seek what was its from the beginning, i.e., a frozen assessment. By defending that right must taxpayer now waive all other rights? Should taxpayer “elect” not to seek to uphold its rights under the freeze act, it will then file a complaint seeking a reduction in the assessment; but only after taxpayer has paid the taxes then due and payable, including those taxes due on the increased assessment which was improperly made in the first instance.
The very facts of the instant matter bear out this conclusion. No one has or can dispute the right of this taxpayer to contest, *84 on the merits, the 1980 assessment which, for whatever the reason, was established at the 1979 judgment level. Must that taxpayer now forfeit its right to attack the 1981 assessment simply because it seeks to force the assessor to conform to the mandate of the freeze statute? That convoluted thinking would reward a taxing district for violating the freeze act and penalize a taxpayer by prohibiting it from doing in 1981 what it has freely done in 1980. Viewed in that light, a taxing district would be given a tool — not envisioned by the Legislature — by which a taxpayer could be hammered into submission. Through the imposition of an arbitrarily increased assessment a taxpayer, according to borough’s argument, must either seek a reduction to the freeze level or pay its increased taxes and seek a reduction from the higher assessment. Naturally the greater the increase in assessment the greater would be the deterent to pursue the latter course.[13] The freeze act does not intend that result.[14]
Again, it is noted that this decision places no extraordinary burdens on taxing districts. In fact, no burden is placed on them whatsoever if they abide by the dictates of the freeze act. In so doing the assessments are stabilized for a three-year period. Should it be determined that either, or both, freeze act exceptions apply, a taxing district need only file a complaint specifying therein the reasons for the application of the exception. In that event the taxpayer is given notice, opportunity to participate in the proceeding and to appeal the judgment of the county board and/or Tax Court if deemed necessary.
*85 Where, as here, the taxing district, through oversight or otherwise, does not comply with the freeze act requirement, this holding simply reduces the taxes to be paid pending the final disposition of the matter to the level where they belonged in the first place. If such reduction results in administration and budget problems, it must be noted that the taxing district had no right to anticipate increased taxes in a freeze year where a “judgment final” predated the assessment date without compliance with the law. In the instant matter, following a hearing on the merits, a judgment will be entered by the Tax Court fixing the fair assessment based on a finding of true value. The freeze act assessment will play no part in that determination. Furthermore, by virtue of the application of N.J.S.A. 54:2^0.4 and N.J.S.A. 54:3-22(c) to (f), commonly referred to as chapter 123, the assessment may be increased or decreased. Devonshire Develop. Assoc. v. Hackensack, 2 N.J.Tax 392 (Tax Court 1981). That judgment will result in the payment or refund of tax dollars, as the case may be. In the interim, however, the taxing district cannot have it both ways.
For purposes of this motion, therefore, an order will be entered providing for an assessment of $38,660,400 for the 1981 tax year. The Order will be prepared by taxpayer’s counsel and submitted pursuant to R. 4:42. The matter will thence proceed to trial accordingly.

 N.J.S.A. 54:2 — 43, the Tax Court freeze act, is the counterpart of N.J.S.A. 54:3-26.

 taxpayer’s 1981 complaint was filed July 28, 1981. The installment for the third quarter tax payment was due August 1, 1981. Taxpayer paid the first and second quarter installments which were due February 1 and May 1.

While only the county board freeze act is in issue here, the same arguments and the decision herein likewise apply to its Tax Court counterpart, N.J.S.A. 54:2-43. See Edgewater v. U. S. Life Realty Corp., 2 N.J.Tax 421 *73 (Tax Court 1981), and Hudson Terrace Apartments v. Fort Lee, 2 N.J.Tax 457 (Tax Court 1981).

“Judgment final,” as used in the Tax Court freeze act (N.J.S.A. 54:2 — 43), is not to be equated with “final judgment.” As employed in the act, a final judgment becomes a judgment final when the period of appeal therefrom has terminated. Its county board counterpart, N.J.S.A. 54:3-26, employs the language “where no request for review is taken to the Tax Court,” which language indicates that a county board judgment becomes a “judgment final” when the 45-day appeal period as provided in N.J.S.A. 54:2-39 has expired. Notwithstanding the different terminology, it is clear that neither freeze act can apply until the appeal period from the judgment has expired.

In Springfield Tp. v. Weinberg, 178 N.J.Super. 83, 428 A.2d 115 (App.Div. 1981), after referring to the Rothman footnote quoted above, the court made the following observation: “We perceive no reason why a consent judgment entered by the county board in conformance with its rules and practices should not be similarly entitled to Freeze Act protection.” Id. at 90, n. 3, 428 A.2d 115.

The Tax Court “Freeze Act Judgment” form, among other matters, recites “This judgment shall not be the basis for application of N.J.S.A. 54:2-43 for a subsequent year.” Any attempt to apply the freeze act to a freeze year judgment is thus avoided.

N.J.S.A. 54:2-42 was repealed effective July 1, 1979 with the advent of The Tax Court.

In fact, Tax Court form LPT — Stip 2-80, entitled “Stipulation of Settlement (Without Affidavit),” is accepted as an alternative to Stipulations of Settlement (With Affidavit) (LPT — Stip 1-80) and contains the following representation:
3. Based upon the foregoing, the undersigned represent to the court that the above settlement will result in an assessment at the fair assessable value of the property(ies) consistent with assessing practices generally applicable in the taxing district as required by law.
The stipulation must be signed by respective counsel or a taxpayer appearing pro se.

“Determination: A Judicial decision settling and ending a controversy.” Webster’s New Collegiate Dictionary (1979 ed.).

In 1980 in Bergen County approximately 9,000 appeals were filed with the county tax board.

Inclusion of its applicability in a settlement is not a prerequisite to the operation of the statute. The act is self-executing, Union Terminal Cold Storage Co. v. Spence, supra, and can only be avoided if either statutory exception is present, N.J.S.A. 54:2 — 43, N.J.S.A. 54:3-26. Where the “judgment final” predates the freeze year assessment date, the taxing district must take action to avoid its application, Edgewater v. U. S. Life Realty Corp., supra; where the “judgment final” postdates the freeze year assessment date, the burden is on the taxpayer to seek, but not prove, its application. Hudson Terrace v. Ft. Lee, supra.

This argument presumes that the “compromise” favored only taxpayer; that the true value is higher than that figure. Obviously, by virtue of its appeals taxpayer disagrees. Secondly, but for taxpayer’s 1980 complaint the “compromise” assessment would prevail for that year as it (the 1980 assessment) was made at the 1979 figure and no appeal was taken therefrom by the borough.

N.J.S.A. 54:3-27.2 provides that interest on tax refunds be paid at the rate of 5%. The prime rate of interest during the 1981 tax year was at least three times greater.

 This conclusion is not inconsistent with the opinion in International Fastener Research Corp. v. Kearny, 2 N.J.Tax 494, 499 (Tax Court 1981), where, although the court spoke in terms of an election of remedies, nothing suggests that the taxpayer sought to pursue the appeal on the merits having once received the benefits of the freeze act.