CITY OF NEWARK, PETITIONER-RESPONDENT, v.
CHARLES FISCHER, OR NORBET CORPORATION,
RESPONDENT-APPELLANT.

Argued October 22, 1951—Decided November 12, 1951.

*Mr. Frederick C. Vonhof* argued the cause for appellant.

*Mr. Vincent J. Casale* argued the cause for respondent (*Mr. Charles Handler,* attorney).

*Mr. Sackett M. Dickinson* argued the cause for the Trustees for the Support of Public Schools of the State of New Jersey (*Mr. Theodore D. Parsons,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. This appeal, certified here on our own motion, is from a judgment of the Division of Tax Appeals. The question is whether a real estate tax may be levied against a vendee in possession under an executory contract for sale when legal title to the premises is in a public body exempt from taxation.

The Trustees for the Support of Public Schools acquired the property by foreclosure in 1935. One of the tenants occupying factory space at the time was a firm in which the defendant Fischer was a partner. In December, 1937, the Trustees entered into a contract for the sale of the premises to Fischer which provided, *inter alia,* that he would remain in possession until the closing of title. The date fixed for closing in the contract was October 2, 1942, almost five years later, and the purchase price was $44,000, of which $5,000 was payable on the execution of the contract, $8,000 in equal installments on the first day of October, 1938, 1939, 1940 and 1941, $9,000 on delivery of the deed, and the balance of $22,000 by purchase money mortgage given to the Trustees.

Fischer was to pay the Trustees interest at the rate of four per cent annually on the unpaid portion of the purchase price, this amount to be in addition to the principal payments stated above.

It was agreed in the contract that:

"Taxes, if any, on said premises prior to the date of passing title, shall be paid by the party of the first part (the Trustees), and insurance premiums, and taxes, if any, shall be adjusted, apportioned and allowed as of the day of delivery of said deed."

The Trustees further agreed:

"If at the time for the delivery of the deed, the premises or any part thereof shall be or shall have been affected by an assessment or assessments which are or may become payable in annual installments of which the first installment is then due or has been paid, then for the purpose of this contract all the unpaid installments of any such assessment, including those which are to become due and payable after the delivery of the deed, shall be deemed to be due and payable and to be liens upon the premises affected thereby and shall be paid and discharged by the seller thereof, upon the delivery of the deed."

The closing of title was first delayed because it was discovered that a small triangular piece was not covered by the mortgages through which the Trustees acquired title in the foreclosure action. A bill to quiet title resulted in a decree favorable to the Trustees on January 10, 1944.

Meanwhile the Trustees and the purchaser had executed an agreement extending the time for closing to October 1, 1943. Fischer professes himself ready, willing and able to close title at any time, but a continuing controversy over tax assessments on the property and the extensive litigation resulting from it have delayed consummation of the transaction up to the present. The Norbet Corporation, successor in interest to Fischer, remains the vendee in possession under an executory contract for sale, legal title still being vested in the Trustees.

The city levied assessments against the property in the name of the Trustees for the years 1935 to 1943 with the exception of 1938 and 1939, when no levy was made. The

assessments for the other years were set aside in *Trustees v. Murphy,* 130 *N. J. L.* 434 (*Sup. Ct.* 1943). Assessments against the property levied in .Fischer's name for the years 1944 and 1945 were cancelled by the county board of taxation as there was no statutory provision under which to levy an assessment against a vendee in possession.

In 1946 the Legislature amended *R. S.* 54:4–1 by adding:

"An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purpose of this act, a mortgage of said land for the unpaid balance of purchase price."

Fischer contested the 1946 assessment levied under this act and in the subsequent litigation, *Norbet Corp. v. Newark,* 135 *N. J. L.* 314 (*Sup. Ct.* 1947), affirmed 137 *N. J. L.* 301 (*E. & A.* 1948), it was held the assessment made by the city was authorized by the 1946 amendment and hence was proper and valid and would not be disturbed. The plaintiff therein specifically did "not seek shelter under the prior tax immunity of the Trustees" but contended that, under the executory contract for the purchase of the property, it had no taxable interest. The Trustees were not a party to the action but filed a brief in the Court of Errors and Appeals as *amici curiae* urging the invalidity of the tax.

In 1947 an assessment on the property was again made in the name of Fischer. It was cancelled by the county board and the city appealed to the Division of Tax Appeals. The case ultimately reached this court, which held that the original appeal by the city was not taken within time and should have been dismissed. *City of Newark v. Fischer,* 3 *N. J.* 488 (1950).

In 1948 the city once more levied the assessment in Fischer's name and its right to do so is the subject of the present controversy. The county board cancelled the assessment but was reversed by the Division of Tax Appeals. Fischer appealed its judgment to the Appellate Division and, prior to hearing, the case was certified here.

Reversal of the judgment is urged on three grounds: first, that a vendee in possession under an executory contract to purchase is not subject to assessment; second, that he has no taxable interest, legal or equitable, in the lands; and, finally, that the city, having failed to make a timely appeal from the cancellation of the 1947 assessment, is estopped from levying assessments for 1948 and 1949 by the provisions of *R. S.* 54:3–26.

The Trustees for the Support of Public Schools protest the assessment on the ground it is not authorized under *R. S.* 54:4–1 as amended because, if the statute were held to govern the transaction presently under consideration, the Trustees would, under the terms of their contract with Fischer, be obliged to pay the taxes, in violation of the constitutional mandate contained in *Article VIII, sec. IV, par. 2*, forbidding the expenditure of the funds of the Trustees for any purpose other than the support of free public schools.

The first ground advanced has already been disposed of in *Norbet Corp. v. Newark, supra.* The appellant concedes the decision in that case is dispositive of the argument here made but we are asked to reconsider and overrule the former holding. No new theory or authorities are submitted other than those already considered. The reason again relied upon is the introductory statement to the 1946 amendment of *R. S.* 54:4–1, setting forth that the bill had "as its purpose the taxation of properties purchased on long-term contracts from the federal government." This, it is contended, so narrows its scope and effect that the amendment is not applicable to property purchased from state agencies.

We are unmoved by the argument, as was the Court of Errors and Appeals. The act is clear on its face and the courts are not free to give it a restrictive meaning based upon an introductory statement.

In *Quackenbush v. State,* 57 *N. J. L.* 18 (*Sup. Ct.* 1894), the court said:

"It is well settled that where the intention of the legislature is clearly expressed in the purview or body of the act the preamble shall not restrain it, although it be of much narrower import. * * *

The preamble cannot restrict the enacting clauses except where their language is ambiguous or uncertain."

In accord are *Hackensack Golf Club v. Hackensack, &c., Com.,* 107 *N. J. L.* 416 *(Sup. Ct.* 1931) ; *Blackman v. Iles,* 4 *N. J.* 82 (1950).

Whatever circumstances may have initially impelled the passage of the amendment, there is nothing in its wording to indicate a legislative intent to restrict its application to one specific transaction or series of transactions. The wording is general and applies to all executory contracts for sale under which the vendee is entitled to or takes possession of the land. A reconsideration fails to persuade us the holding of the Court of Errors and Appeals in the *Norbet* case should be changed and we here reaffirm it.

The second ground on which we are asked to reverse the judgment below is that the defendants have no legal or equitable interest in the lands which is subject to taxation. In support of this, the defendants cite *Article VIII, sec. I, par.* 1, of the *State Constitution,* which requires that all real property be assessed according to the same standard of value, and *R. S.* 54:4–23, which requires assessment at the full and fair value. It is argued true value is the market value and is shared fractionally by the Trustees and the vendee, the interest of each detracting from the value of the other. The present assessment levied in the name of Fischer alone is, it is said, an assessment for the full market value and the vendee does not own so comprehensive an interest in the property.

This question has been decided adversely to the defendants' claim in *S. R. A., Inc., v. Minnesota,* 327 *U. S.* 558, 90 *L. Ed.* 851 (1946), wherein the United States Supreme Court, construing a statute similar to our own, said:

"Therefore, when petitioner entered into possession of this real estate under its contract of purchase, the taxed property by the

transfer became subject to the territorial jurisdiction of Minnesota. * * * Where beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money. * * * The whole equitable ownership is in the petitioner and the value of that ownership may be ascertained on the basis of the full value of the land."

The principle so enunciated was approved in the *Norbet* case, *supra,* and is determinative of Fischer's claim that he has no taxable interest in the property and that taxing him for the full value infringes the cited constitutional and statutory provisions.

Lastly—and this is the only argument which has not already been advanced and decided in the previous appeal in the *Norbet* case—it is urged the city is estopped from levying assessments for 1948 and 1949 by *R. S.* 54:3–26, the so-called "freeze" statute, which provides:

"Where no appeal is taken to the Division of Tax Appeals in the State Department of Taxation and Finance to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the two assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal."

The city contends this statute applies only to determinations of the amount of assessed valuation and not to the tax exempt status of property.

Examining briefly the facts upon which the applicability of the "freeze" statute is predicated, it appears the 1947 assessment was cancelled by the county board despite the opinion in the *Norbet* case, *supra,* but the decision as published contained a clerical error in setting forth the amount of the assessed valuation. A corrected judgment was subsequently entered and the city, contending it was within time, filed its appeal within a month thereafter. Various further

appeals were taken with divergent results until the case was finally decided by this court in *City of Newark v. Fischer, supra.* There we held the appeal from the decision of the county board should have been taken within one month of the entry of the original judgment since the error was merely a typographical one not substantially affecting the result. The merits of the case were not considered or passed upon, the court saying:

"The sole question. involved relates to the timeliness of an appeal made by the City of Newark to the Division of Tax Appeals from the judgment of the Essex County Board of Taxation."

The so-called "freeze" statute is part of *Article* 4 of *Title* 54, entitled "Appeals," and deals with appeals by a "taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county." *Article* 4 is not concerned with the tax exempt status of property nor with adjudications by county tax boards relative thereto. *R. S.* 54:3–26 provides the valuation as determined by the county board shall, if no further appeal is taken, remain in effect for the next two succeeding assessment years "except as to changes in value of the property occurring after the assessment date." The wording of this section and of related sections in the same article makes it apparent the legislation was intended to govern the frequency of appeals as to disputed amounts of assessments and not the tax exempt status of real property. There is nothing in the enactments to suggest, for example, that property which had been determined to be tax exempt by the county board and was thereafter transferred to a new owner not entitled to the exemption, should retain its privileged status during the next two assessment years; nor can it be that such an inequitable result was contemplated.

The evil which the "freeze" statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its

market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board. It has no application, either by its phraseology or its obvious intent, to determinations of the tax exempt status. As said in *Randolph v. Larned*, 27 *N. J. Eq.* 557 (*E. & A.* 1876), in construing another statute, "the mischief and the remedy proposed are plainly apparent on the face of the act. \* \* \* The act must be so construed as to suppress the mischief and advance the remedy."

The Trustees, apparently embarrassed by their voluntary embrasure of an obligation, the discharge of which they allege is prohibited by the Constitution, have actively participated for the first time as a party in litigation they had previously declined to enter in that capacity until after a judicial decree therein had been rendered.

Neither their problem—encompassing the relationship and effect of the doctrine of *ultra vires* as suggested in the briefs—nor the method to be employed by the municipality in enforcing the payment of the tax is before us now for disposition, although the city concedes: "Of course, we cannot collect against the Trustees, and that issue has already been litigated and decided against the City in a former case."

The difficulties so apprehended, however, present no compelling reason for departing from a principle adjudicated by our court of last resort and seemingly supported by the judicial pronouncement of the United States Supreme Court.

We find no error in the determination of the Division of Tax Appeals and its judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.