292 N.J. Super. 529 (1996)
679 A.2d 193
GRANDAL ENTERPRISES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
BOROUGH OF KEANSBURG, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1996.
Decided July 25, 1996.
*531 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Amy R. Reisen argued the cause for appellant (Freundlich & Reisen, attorneys; Lawrence J. Freundlich, of counsel; Ms. Reisen, on the brief).
Joseph L. Foster argued the cause for respondent (Ansell, Zaro, Bennett & Grimm, attorneys; Mr. Foster, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).
Plaintiff appeals from the order of the Tax Court dismissing its motion for relief under the provisions of N.J.S.A. 54:51A-8, referred to as the Freeze Act, upon the grounds of lack of jurisdiction because plaintiff failed to appeal the omitted/added assessments to the county board of taxation by December 1, 1994, allegedly required by N.J.S.A. 54:4-63.11 and -63.39. For the reasons that follow, we reverse the judgment of the Tax Court and remand the matter for further proceedings.

*532 I.
On June 19, 1956, plaintiff Grandal Enterprises, Inc.'s predecessor in title, New Point Comfort Beach Company, leased to the Borough of Keansburg (Borough) for thirty years a portion (conceded by both parties to be 9.5 acres) of its 16.22-acre ocean-front property shown on the tax map as block 184, lot 4. The Borough used the property primarily as a parking lot and to allow public access to the beach and boardwalk.
Annual consideration for the lease was one dollar, payment of riparian lease fees, and enactment of an ordinance intended to secure state funding for beach improvements. Among the provisions in the lease was one shifting the lessor's tax liability for the leased portion of the property:
[Para.] 8. All taxes which may hereafter be levied against said property by the Borough of Keansburg or any other governmental agency shall be assumed and paid by the Borough-lessee as part of the consideration of this lease.
In 1973, plaintiff purchased New Point Comfort Beach's property, including block 184, lot 4, and assumed the lease. After the lease expired in 1986, the Borough continued to operate the leased premises as a holdover tenant.
During the period of the Borough's occupancy, the Borough assessed the property for tax purposes. In 1990, when plaintiff appealed its assessments to the Tax Court, lot 4 in block 184 as shown on the tax map was assessed for a combined amount of $3,418,000 ($2,016,000 for land; $1,402,000 for improvements). Complaints were also filed for the tax years 1991 and 1992. In June 1992 the parties settled (hereinafter the 1992 judgment), and the aggregate assessment of lot 4 was reduced to $2,993,000 ($1,848,000 for land; $1,145,000 for improvements).
On December 4, 1992, plaintiff requested that the Borough execute a lease for the parking lot area. The Borough declined the request. On April 8, 1993, the Borough's attorney notified plaintiff that as of May 1, 1993, the Borough intended to discontinue its use of the parking lot. The letter also informed plaintiff that the 9.5 acres would be "returned to the tax rolls" and that it *533 would be "receiving a pro-rated tax bill for the remainder of 1993 based upon the current assessment of the property."

II.
On April 23, 1993, plaintiff filed a complaint in the Law Division (lease action) seeking enforcement of the clause in the lease requiring the Borough to pay all taxes levied on the 9.5-acre portion of lot 4. In defense of plaintiff's claim, the Borough asserted that it had made the leased portion of lot 4 exempt from taxation during the period of its occupancy. In support of this assertion, the Borough pointed to a notation on its tax duplicate denominating the property as tax exempt and claimed that the quarterly tax bills sent to plaintiff for lot 4 indicated the taxable parcel was only 6.72 acres. The Borough did not produce any subdivision, ordinance, or resolution enacted by it to confer tax exempt status on the parcel at issue.
The Law Division granted summary judgment in the Borough's favor. Plaintiff appealed, and on January 9, 1995, we reversed the Law Division's judgment. See A-1517-93T5. In the course of our opinion, we noted:
When Grandal appealed the tax assessment of the property on two occasions, no mention was ever made in negotiations or proof about the tax-exempt status of part of Lot 4. In both appeals [plaintiff's] appraiser, John F. Cattanach, stated that $1,848,000 "represents a fair estimate of the true assessable value of [the entire 16.22 acres of Block 184, Lot 4], including land improvements."
The most recent tax appeal, which resulted in a settlement for 1990 (and for 1991 and 1992), refers to Lot 4 and block 184, without any reference to "exempt" property. This settlement concerned the assessable value of Lot 4 as delineated on the Borough tax map. The parties settled in the Tax Court proceeding based on the value of the entire parcel, and therefore do not have a justiciable issue in that forum.
We remanded the matter to the Law Division to provide plaintiff an opportunity to conduct discovery on the issue of how the purported tax exemption came into effect. On remand the trial court granted summary judgment in favor of the Borough, dismissing plaintiff's complaint, from which judgment plaintiff has *534 again appealed to this court. This appeal, bearing Docket No. A-2569-95T5, is pending.

III.
In the fall of 1994, while plaintiff's appeal from the dismissal of its lease action was pending, the Borough imposed on plaintiff an "omitted/added" land assessment for block 184, lot 4, qualifier X (lot 4X) of $190,000 prorated for six months of 1993 and an "added" land assessment of $190,000 for all of 1994.[1] Plaintiff did not file a direct appeal from these assessments to the county board of taxation. Rather, on December 23, 1994, under the 1992 tax appeal docket number in the Tax Court, plaintiff moved pursuant to R. 8:7(d) for relief under the Freeze Act to set aside these omitted/added assessments. However, by the time plaintiff's motion for relief under the Freeze Act was filed, the date by which it could have appealed the omitted/added assessments directly to the county board of taxation, December 1, 1994, had passed. N.J.S.A. 54:4-63.11 and -63.39.
Because the Borough had never specifically notified plaintiff of the existence of lot 4X, i.e., the 9.5 acre parcel previously leased to the Borough, plaintiff claimed it was unaware that it was paying taxes on less than the entire 16.22-acre parcel comprising lot 4 on the tax map. Plaintiff states that it settled the 1990, 1991 and 1992 tax appeals on that basis. Plaintiff further asserted that as a consequence of this understanding, it accepted the aggregate assessment under the 1992 judgment as the fair value of its entire 16.22-acre parcel.
On the other hand, the Borough contended that plaintiff should have known that the assessment addressed only the 6.72 acres used by plaintiff because the leased property was shown as exempt on the tax duplicate and "6.72 acres" was noted on the tax bills sent to plaintiff. The Borough claimed that lot 4X constituted *535 the tax exempt portion of plaintiff's parcel and had appeared as a separate line item on the Borough's tax duplicate since at least 1989. According to the tax assessor, block 184, lot 4 consisted only of the 6.72-acre portion of the property that had never been leased to the Borough.
The Tax Court denied plaintiff's motion for Freeze Act relief. Grandal Enters. v. Keansburg Borough, 15 N.J. Tax 74 (Tax 1995). It found that because the assessments of $2,993,000 on "lot 4" remained unchanged for 1993 and 1994, plaintiff has thus "obtained the benefit of the Freeze Act." Id. at 76. Plaintiff's application was therefore considered moot.[2] Although acknowledging that the information concerning lot 4X was undeveloped, the judge treated it as a separate lot not subject to the statutory freeze. Id. at 79-80. She also concluded that she was not bound by our prior finding that the 1992 settlement encompassed the entire 16.22-acre parcel, as that finding was merely "dictum." Id. at 80. The judge emphasized that she was not deciding "whether there was, or was not, a separate lot 4X or, if there was, whether it was properly created by the borough." Id. at 79. She also refused to resolve "[w]hether the 1992 Tax Court judgment settled the value of the entire parcel." Id. at 81. The deciding factor, in the judge's view, was that the proper procedural mechanism for challenging the omitted/added assessments on lot 4X was a direct appeal of those assessments and not a Freeze Act application. The judge concluded that "[p]laintiff's failure to timely appeal the added assessments deprive[d] [the Tax Court] of jurisdiction to review them even if the assessments were completely improper." Id. at 79.
*536 On appeal, plaintiff contends: (1) the assessments were retaliatory and therefore void; (2) the Freeze Act applies to the 1992 judgment covering the entire 16.22 acres (block 184, lot 4 on the tax map); (3) the added and omitted assessments are invalid because the Borough did not follow the statutory procedures; and (4) the Tax Court erred by failing to respect and follow the findings in our prior opinion deciding plaintiff's appeal in the lease action.

IV.
Generally, each annual assessment of a property's value is separate from the assessment of the prior or future year. Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 103, 89 A.2d 385 (1952). However, N.J.S.A. 54:51A-8 provides:
Where a final judgment has been rendered by the tax court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where those changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for the appeal. However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
Exceptions to the "freeze" are permitted only when the taxing authority demonstrates circumstances occurring after the base year assessment date that result in an increase in the value of the property or when the taxing authority implements a revaluation program affecting all property in the tax district. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 167, 110 A.2d 110 (1954); Curtiss Wright Corp. v. Wood-Ridge Borough, 4 N.J. Tax 68, 73-74 (Tax 1982). "[I]t is the municipality which must urge the departure from the Freeze Act mandate and carry the burden of proof as to such change." Clearview Gardens Assocs. v. Township of Parsippany-Troy Hills, 196 N.J. Super. 323, 330, 482 A.2d 523 (App.Div. 1984). Once a tax assessor becomes aware of a judgment freezing the assessment at issue for *537 the next two tax years, "the mandatory and self-executing nature of the Freeze Act requires the assessor to comply." Id. at 329, 482 A.2d 523; see also AKLS Realty Assocs. v. Township of Burlington, 10 N.J. Tax 1, 5 (Tax 1988).
The Freeze Act was intended to eliminate "repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals." City of Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951); Township of Springfield v. Weinberg, 178 N.J. Super. 83, 89, 428 A.2d 115 (App.Div. 1981). In accordance with this objective, the Supreme Court has held that judgments of the Tax Court obtained by settlement between the parties also are entitled to Freeze Act protection. South Plainfield Borough v. Kentile Floors, Inc., 92 N.J. 483, 487-89, 457 A.2d 450 (1983).
It is not necessary for a taxpayer to file a tax appeal to obtain the benefit of the Freeze Act. See Union Terminal Cold Storage Co. v. Spence, supra, 17 N.J. at 167, 110 A.2d 110. Moreover, if a taxpayer seeks a further reduction in the assessment, it is not foreclosed from Freeze Act protection. The Curtiss Wright court, faced with such an argument by a taxing district, reasoned as follows:
To hold, under these circumstances, that the right to invoke the freeze and the right to continue to pursue an appeal cannot coexist would serve to defeat the very purpose of the freeze act. Lest we forget, it was the arbitrary increase of the assessment without first filing a complaint by the taxing district that created the problem in the first instance. In taking this action the taxing district has forced taxpayer to affirmatively seek what was its from the beginning, i.e., a frozen assessment. By defending that right must taxpayer now waive all other rights? Should taxpayer "elect" not to seek to uphold its rights under the freeze act, it will then file a complaint seeking a reduction in the assessment; but only after taxpayer has paid the taxes then due and payable, including those taxes due on the increased assessment which was improperly made in the first instance.
[Curtiss Wright Corp. v. Wood-Ridge Borough, 4 N.J. Tax at 83.]
In the case at bar, plaintiff does not seek a further reduction, but merely the self-executing protection of the Freeze *538 Act. The Tax Court judge's ruling that plaintiff had to file a tax appeal for "lot 4X" before the county board of taxation by December 1, 1994, rewards the Borough for violating the Freeze Act and penalizes plaintiff by denying it the self-executing attributes of the Act. Plaintiff should not have to pay the taxes on the improper assessment (see N.J.S.A. 54:3-27) and then file a complaint to recover what the Freeze Act already guarantees, i.e., that for the two years immediately following the valuation judgment, the assessment may change only if the value of the property changes and the municipality files a complaint alleging such change (or there is a complete revaluation).
The Borough is mistaken as to the nature of these proceedings. This case hinges on whether plaintiff's motion is to obtain the benefit of the Freeze Act or to appeal an added or omitted assessment. Plaintiff argues that it is the former which is the exclusive procedure as set forth in R. 8:7(d) whereas the Borough contends that this is an appeal of an added or omitted assessment which was not filed by December 1, 1994, as required by N.J.S.A. 54:4-63.11 and -63.39. If plaintiff is merely seeking to obtain the benefit of the Freeze Act, as it is, it must do so in accordance with R. 8:7(d), by filing a "motion for supplementary relief to the Tax Court under the caption of the Tax Court judgment for the base year to which the Freeze Act application is sought." R. 8:7(d). If it wanted a further reduction it had to file an appeal with the county board of taxation and comply with the time limitations of N.J.S.A. 54:4-63.11 and -63.39. It could have proceeded with both actions simultaneously, Clearview Gardens v. Parsippany-Troy Hills Tp., supra, 196 N.J. Super. at 330, 482 A.2d 523, but it did not do so.

V.
The Borough advances two arguments against the result we reach. First, it contends that the validity of a tax exemption is not an appropriate issue for a Freeze Act proceeding. Since plaintiff's claim for relief ultimately rests on the premise that the *539 Borough improperly created the tax exempt lot 4X, the Borough asserts it cannot be raised before the Tax Court in a Freeze Act motion. We recognize that the Freeze Act "was intended to govern the frequency of appeals as to disputed amounts of assessments and not the tax exempt status of real property." City of Newark v. Fischer, 8 N.J. at 199, 84 A.2d 547; see also Boys' Club of Clifton v. Township of Jefferson, 72 N.J. 389, 405, 371 A.2d 22 (1977); County of Essex v. City of East Orange, 214 N.J. Super. 568, 576, 520 A.2d 788 (App.Div.), certif. denied, 107 N.J. 120, 526 A.2d 189 (1987); Blair Academy v. Township of Blairstown, 95 N.J. Super. 583, 592-93, 232 A.2d 178 (App.Div.), certif. denied, 50 N.J. 293, 234 A.2d 401 (1967). However, this limitation on the scope of the Freeze Act is concerned primarily with attempts to rely on judgments issued by the Tax Court holding a piece of property tax exempt by taxpayers who for whatever reason are no longer eligible for the exemption. See City of Newark v. Fischer, supra, 8 N.J. at 199, 84 A.2d 547. In other words, the limitation merely reflects the rule that only judgments based upon valuation of the property trigger the protections of the Freeze Act. See ibid.; Belmont v. Wayne Tp., 5 N.J. Tax 110, 115 (Tax 1983).
While the tax exempt status of lot 4X is clearly an issue in this case, it is collateral to the main question of whether the Borough has imposed omitted/added assessments that are inconsistent with the 1992 Tax Court judgment. That judgment, although the product of a settlement, clearly was based upon the valuation of plaintiff's property. The parties' current dispute focuses on what portion of the property is covered by the judgment's determination of valuation. In any event, we are convinced that the Freeze Act is potentially applicable to a case such as this in which the taxing authority is alleged to have impermissibly circumvented the statutory "freeze" by imposing an omitted/added assessment on property which was the subject of a prior settlement.
Second, the Borough argues that permitting plaintiff to assert the Freeze Act after expiration of the limitations period for appealing omitted/added assessments would undermine the budgetary *540 process. It is certainly true that "in taxing matters, strict adherence to appeal deadlines is essential for the stability essential to the municipal budget and taxing procedures." Venture 17 v. Hasbrouck Heights Borough, 12 N.J. Tax 152, 158 (Tax 1991); see also F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-26, 495 A.2d 1313 (1985). Nevertheless, we believe the Borough's concerns are overstated. Invocation of the Freeze Act by a taxpayer is permissible only if the taxing authority fails to honor a judgment concerning the amount of an assessment on the property at issue. If no such judgment has been entered, then the taxpayer's only course for relief is to file an appeal of the added assessment it claims was improperly imposed.
We stress that the taxing authority's interest in revenue stability is not the only policy concern at stake. Indeed, the very "raison d'etre" of the Freeze Act is "the protection of the taxpayer, not the municipality." Borough of Hasbrouck Heights v. Division of Tax Appeals, 41 N.J. 492, 499, 197 A.2d 553 (1964). We are convinced that our decision strikes the proper balance between the legitimate interests of both the taxpayer and the government body, particularly in the absence of any statutory provision requiring that a Freeze Act motion be brought within a specific period of time. See AKLS Realty Assocs. v. Township of Burlington, supra, 10 N.J. Tax at 4 ("Since the wording of the Freeze Act demonstrates that its application is mandatory and self-executing, there is no direction contained therein for filing of a Freeze Act complaint nor a time limit for its application to be made.").

VI.
It is thus clear that under the Freeze Act, the 1992 judgment entered by the Tax Court pursuant to the settlement reached between the parties must be honored by the Borough for the 1993 and 1994 tax years. Accordingly, it is undisputed that the Borough is prohibited from increasing the assessment on lot 4 unless it files a complaint and proves by a preponderance of the evidence *541 that subsequent events have triggered an increase in the value of that parcel. See Clearview Gardens Assocs. v. Township of Parsippany-Troy Hills, supra, 196 N.J. Super. at 329-30, 482 A.2d 523; Curtiss Wright Corp. v. Wood-Ridge Borough, supra, 4 N.J. Tax at 74. No such complaint has been filed. Instead, the Borough's position, apparently adopted by the Tax Court, is that the 1992 judgment has no impact on the assessment for lot 4X, which was allegedly tax exempt at the time the judgment was entered.
Consequently, the scope of the 1992 judgment is the key issue in this case. If plaintiff is correct that the $2,993,000 assessment represented the fair value of all 16.22 acres of lot 4 (as designated on the Borough's tax map), then the omitted/added assessments imposed by the Borough on 9.5 acres of that property would effectively increase the assessment enshrined in the 1992 judgment in contravention of the Freeze Act. On the other hand, if the 1992 judgment merely determined an assessment for the 6.72 acres of lot 4 never leased or occupied by the Borough, then the omitted/added assessments on lot 4X would not affect that judgment, and the taxpayer would not be entitled to any further Freeze Act relief.
In resolving plaintiff's motion for Freeze Act relief, the Tax Court was required to determine whether the omitted/added assessments impermissibly increased the assessment incorporated in the 1992 judgment. Thus, the Tax Court was required to determine the scope of that judgment. Its failure to do so requires that its order dismissing plaintiff's motion be reversed.

VII.
The judgment of the Tax Court is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The taxes amounted to $2,851.90 for 1993 and $5,745.60 for 1994, payable November 1, 1994.
[2] The Tax Court judge was aware of the parties' ongoing dispute in which plaintiff contended that it was owed rent in compensation for taxes paid on the leased portion of the property and the Borough's contention that it had complied with the lease requirement by classifying the leased parcel as exempt property. She noted that the Appellate Division had remanded the issue to the Law Division, where it was then pending, for discovery regarding the manner in which the leased portion of the premises had been assessed.