PIZZUTO, J.T.C.
Plaintiff Northvale Borough contests the ratio of assessed to true value determined for that municipality by the Director of the Division of Taxation in the table of equalized valuations certified in October 1997 for state school aid distribution purposes pursuant to N.J.S.A 54:1-35.1. The same ratio was also established as the average ratio for 1998 tax appeals pursuant to N.J.SA 54:l-35a (commonly known as Chapter 123). The second statute requires that the school aid ratio be utilized as the Chapter 123 ratio. The two actions, taken simultaneously, are therefore different aspects of the same determination.
The determination of assessment ratios entails an initial screening of all sales of real property that occur in the subject municipality, within a defined period, to identify those sales that are not indicative of the relationship between assessment practice and market value. These sales are then excluded from further analysis, and the remaining or usable sales provide the data used to derive a ratio in the manner described in Willingboro Tp. v. Burlington County Bd. of Taxation, 62 N.J. 203, 300 A.2d 129(1973).
Northvale disputes the Director’s classification of a particular sale as not usable in ratio calculation. The disputed sale is from a mortgage lender that had acquired the property through foreclosure-like proceedings following the borrower’s default. The Director originally determined the sale to be non-usable on the basis *208 that the circumstances of the seller’s acquisition often give rise to hurried sales at prices below market value. Northvale stood ready to proceed to trial on the circumstances of the sale to demonstrate marketing efforts and results it contended were indicative of a market price. The Director, however, has moved for summary judgment, raising a different issue. The Director seeks to sustain the exclusion of the sale on the ground that the assessment of the subject property for the year in which the sale occurred was established pursuant to the Tax Court Freeze Act, N.J.S.A. 54:51A-8. For the reasons explained below, the Director’s motion is granted.
The Freeze Act operates, with certain exceptions, to continue the effect of a Tax Court judgment for two years following the year to which the judgment directly applies. By its terms, the Act is not applicable to a subsequent year when there has been a comprehensive tax revaluation, or if the property has experienced a change in value. Subject to these exceptions, the Act is given effect, unless the taxpayer either waives its protection, South Plainfield Bor. v. Kentile Floors, Inc., 92 N.J. 483, 491-492, 457 A.2d 450 (1983), or litigation contesting the assessment for the subsequent year is prosecuted to a separate determination of value for that year. Clearview Gardens Assocs. v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984). The Act’s provisions apply both to judgments entered to effectuate settlements and to those entered after trial. South Plainfield Bor. v. Kentile Floors, Inc., supra.
Where the Freeze Act applies and the terms of the judgment are known at the time the assessment list for the subsequent year is being prepared, the assessor is required to conform the subsequent year’s assessment to the judgment. Grandal Enterprises, Inc. v. Keansburg Bor., 292 N.J.Super. 529, 536-537, 679 A.2d 193 (App.Div.1996). Where the judgment terms do not become known until after an assessment for the subsequent year has been determined, the taxpayer is entitled to relief under the Freeze Act, regardless of whether an appeal for the subsequent year has been filed. Union Terminal Cold Storage v. *209 Spence, 17 N.J. 162, 110 A.2d 110 (1954). Relief is afforded upon post-judgment application in the action in which the judgment was entered to establish the subsequent year’s assessment in conformity with the judgment. R. 8:7(d). Application of the Freeze Act in this fashion is the only instance in which a judgment may be entered for a year which is not the subject of a separately filed action.
The Director considers that assessments established under the Freeze Act are not representative of the assessor’s independent judgment and, therefore, are not reflective of the assessment practices that the ratio is designed to measure. Accordingly, the Director regards sales of properties whose assessment on the sale date has been set under the Freeze Act as not usable in ratio calculation. This category of sale is not one specifically recognized in NJAC 18:12-1.1, the regulation the Director has adopted that enumerates certain sales categories as not usable. The circumstance of an assessment determined under the Freeze Act is, rather, considered to fall within the general category (number 26) of sales “which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell.”[1]
The Director’s practices concerning the exclusion of sales where the assessment has been set under the Freeze Act were explained in the Summer 1994 issue of the New Jersey State Tax News. The question is discussed together with the related question of the impact of judgments pursuant to settlement on the usability of *210 sales. Generally summarizing a 1966 opinion from the Attorney General, the publication advises that a sale of real property for which the assessment has been modified by “consent judgment” within the year sold is usable, provided no other factors make the sale non-usable. The assessment ratio calculation utilizes the original assessment, as determined by the assessor, not the modified assessment fixed by the judgment. The discussion does not explicitly address assessments changed by judgment following trial, but the same reasoning would certainly apply. In either case, a judgment entered after the original assessment has been set as the assessor’s valuation would not affect comparison between the original assessment and the sales price as a measure of assessment practice.
Where the original assessment itself, however, is the result of a settlement, it would not be, in the language of the Attorney General’s opinion, “the product of the assessor’s unfettered determination.” The inference is that a sale of property that has been so assessed for the year of the sale would be non-usable. The opinion expressly concludes, moreover, that the Director may exclude sales in the years following a settlement where the effect of the settlement is continued in assessments set pursuant to the Freeze Act.
The exclusion of sales of this kind was an issue presented in litigation between Northvale and the Director concerning the assessment ratio published in October 1996. The Tax Court accepted the Director’s argument and concluded that exclusion of certain sales, where the assessment is set pursuant to the Freeze Act, is a reasonable practice designed to assure a comparison of sales prices with initial assessments reflecting general assessment practices, rather than with revised assessments that reflect settlement valuations. The Director has articulated the summary judgment motion in terms of collateral estoppel and argues that last year’s determination precludes relitigation between these parties of the question of exclusion of sales where assessments are established under the Freeze Act.
*211 Last year’s litigation, however, concerned the Director’s exclusion of three sales, only one of which presented the Freeze Act question. Northvale prevailed with respect to one of the other two sales, and the increase in its ratio from the inclusion of that sale was greater than it would have been in the event the sale presenting the Freeze Act question had also been included. Since municipalities seek to increase ratios so as to reduce equalized valuations and limit assessment reductions allowable by application of Chapter 123, Northvale had no reason to appeal last year’s Tax Court judgment.
The application of collateral estoppel presupposes that the party to be precluded from relitigating a question had a sufficient interest in the outcome of the original litigation of the question to pursue the original litigation vigorously and to finality. Glictronix Corp. v. Am. Tel. & Tel. Co., et al., 603 F.Supp. 552, 563 (D.N.J. 1984). That interest was clearly absent here, at least with respect to appellate review, and collateral estoppel should therefore not be invoked. Nevertheless, the same reasoning followed last year leads to the same result, and the principle that sales should be excluded where the assessment is set pursuant to the Freeze Act is accepted.
It is now necessary to address the application of this principle to the circumstances of this year’s disputed sale. The property was sold on July 29,1996. It had been the subject of tax appeals for the years 1994 and 1995. A stipulation of settlement for both years was received by the Tax Court on December 7, 1995, and judgment reducing the 1995 assessment from $1,756,600 to $1,273,900 was entered on December 22, 1995. Neither the stipulation nor the judgment mentions the Freeze Act. On the assessment list submitted to the Bergen County Board of Taxation for 1996, the assessor repeated the 1995 original assessment. In an “Assessor’s Petition of Appeal” received by the county board on January 25, 1996, the assessor requested a reduction to the 1995 judgment figure, and recited “tax court judgment” as the reason for the request. The petition included seven items, identified as “corrections” to the tax list, all but one of which recited this *212 reason. The board entered a judgment on February 14, 1996, on the printed form ordinarily used for disposition of appeals filed by taxpayers, making the requested change. A separate appeal for 1996 was filed in the Tax Court and came to be withdrawn, with the Tax Court Judgment of Dismissal having been entered on April 2, 1996. In a letter to his client, dated March 25, 1996, the attorney who filed the appeal noted that it had been filed “to conclude our prior settlement” and that the assessor had advised counsel that “he had filed an assessor’s appeal to conclude the settlement.”
The facts so far narrated appear from the papers submitted on the summary judgment motion. In opposing the motion the municipality argues that the 1996 assessment did not result from the application of the Freeze Act to the 1995 judgment, but rather from a separate settlement for 1996. Accordingly, Northvale seeks to have the sale considered usable, with the assessment taken as the number appearing on the original tax list.
In order to elucidate the circumstances attending the establishment of the 1996 assessment, the assessor and the assistant county tax administrator, at the court’s request, gave testimony supplementing the motion papers. The assessor testified that he was not aware of the 1995 judgment at the time he prepared the 1996 tax list. He also testified that his discussions of the 1996 assessment with the taxpayer’s representatives did not occur until after the filing of the 1996 Tax Court complaint on or about March 6, 1996. Although his petition of appeal requested the county board to conform the 1996 assessment to the 1995 judgment, he did not consider this procedure to be the application of the Freeze Act. The assistant tax administrator testified that the county board’s procedures concerning “assessor’s appeals” differ from those applicable to appeals filed by taxpayers or taxing districts. Specifically, the county board disposes of an assessor’s appeal without conducting a hearing on notice to the taxpayer.
Although the issue argued by the parties was whether the 1996 assessment was set pursuant to the Freeze Act, as the Director contended, or by separate 1996 settlement,'as Northvale argued, it *213 is actually not necessary to resolve this issue to find the Director entitled to summary judgment. The significant facts are: that the 1995 assessment was determined not later than December 1995; and that the actions to substitute the 1995 judgment figure in place of the original 1995 assessment in 1996 were taken in recognition of that determination, and not to effect the reduction of a 1996 assessment, as such.
Certainly the Freeze Act applied to the 1995 judgment, since taxpayer had not waived its benefit. At the time the assessor’s appeal was filed, the assessor had the opportunity to conform the 1996 assessment to the 1995 judgment at an early date without requiring the taxpayer to take action of its own. Under the Freeze Act he had the obligation to do so, unless there had been some separate understanding with taxpayer concerning the 1996 assessment. The parties may have come to a separate stipulation, not memorialized as far as the present record shows, to set the 1996 assessment at the same figure as the 1995 judgment.[2] Whether this was the tenor of their agreement, or whether it was a tacit understanding that the Freeze Act would apply, in either event the 1996 assessment was set, as taxpayer’s attorney’s letter observed, as part of a comprehensive settlement of the assessments for 1994,1995 and 1996.
In neither event was there a 1996 assessment that was, in the terms of the Attorney General’s opinion, the “product of the assessor’s unfettered determination.” Had the settlement of the appeals for the earlier years not occurred until after the 1996 assessment had been set at $1,756,600, that figure would be *214 usable, in the reasoning of that opinion, as the assessment component in ratio calculations. As it is, the appearance of that number on the original 1996 tax list stems from the fact that the judgment in the 1995 appeal, entered at approximately the time the assessment list was in preparation, was not known to the assessor in time to be reflected in the original list.
The mechanism of the “assessor’s appeal” that was utilized to conform the assessment to the settlement is appropriately regarded not as an adjudication by the county board as between adverse parties, but rather as an administrative action to revise or correct an assessment at the assessor’s request. By statute the assessor is required to submit a tax list to the county board by January 10 of each year. N.J.S.A 54:4-35. The county board thereafter is charged to examine, revise and correct the tax list so submitted. N.J.S.A. 54:4-46. Taxpayers are to receive notice by mail of the current year’s assessment by February 1 under N.J.S.A 54:4-38.1, but the same statute also requires notice thereafter within 30 days of any change in the assessment. N.J.S.A 54:3-21, moreover, allows an affected taxpayer 45 days from notification of an assessment change to file a tax appeal. The county board’s own final certification of the tax list must be completed by June 3. N.J.S.A. 54:4-55.
It appears from the timing and from the form of the assessor’s petition of appeal utilized here that the assessor was requesting such corrections to assessments not yet regarded as final by the county board. The New Jersey Assessors Handbook describes the procedure for such correction as follows: *215 The Bergen County Board’s use of a form of judgment of the same kind used to determine taxpayer appeals should not obscure the fact that in this instance the “assessor’s appeal” was an administrative correction of a tax assessment and not the adjudication of a contested proceeding.
*214 After the Tax List and Duplicate have been filed on or before January 10 with the county board of taxation, the assessor no longer has the authority to make changes in the Tax List. The Assessor, however, may informally apply to the county board of taxation any time prior to formal certification of the Tax List by the board in order to request a change in the assessed valuation of property. The county board of taxation in accordance with its authority under the law may make changes in the Tax List as it deems appropriate, prior to its certification____ If an error is discovered after certification of the Tax List by the county board of taxation, many county boards of taxation require the filing of a formal tax appeal to carry out correction of error.
[New Jersey Assessor’s Handbook, Sec. 1102.3.]
*215 In sum, the assessment that appeared on the original 1996 tax list should not be considered to be the actual assessment for that year, while the corrected assessment was the product of a settlement that had been concluded before the assessment process was completed. In these circumstances, the assessment does not reflect general assessment practices and the sale is not usable in ratio calculations. Accordingly, summary judgment shall be entered dismissing the complaint.

 Although the language of the general category addresses the circumstances of the parties to the sale in terms of the sale price as an indicator of market value, it is clear (from the overall context of the regulation and the purpose of assessment ratio determination) that other factors besides the utility of the sale price as a market indicator may make a sale not usable. See, e.g., categories 6 (sales of only a portion of the property that has been assessed) and 7 (sales of properties substantially improved subsequent to assessment and prior to sale). The regulation provides for inclusion of a sale falling within an enumerated category, if it appears after investigation to be a market sale and "it meets all other requisites of a usable sale.” NJ.A.C. 18:12-1.1.

 Taxable value is determined as of October 1 of the year preceding that for which the assessment is made. NJ.S.A. 54:4-23. As of this date, the parties to a tax appeal for an earlier year may, as a material part of the settlement for the earlier year, make an enforceable stipulation of taxable value for a year that is not yet the subject of a tax appeal. An attempt to stipulate taxable value earlier thsm October 1 of the “pre-tax year” would be ineffective, since the circumstances that will hold on this valuation date are not yet known. An agreement by the taxpayer, however, made as a material part of the settlement of an appeal for a given year, not to seek a reduction below a specified level in a future year would, in ordinary circumstances, be enforceable.