AXELRAD, J.T.C.
Taxpayer filed a complaint asserting that the increases made by the assessor in the 1997 real property tax assessments for the properties located at 145 Mathistown Road, Block 325.200, Lot 15.02, and 300 Lake Champlain Drive, Block 325.200, Lot 15.03, in Little Egg Harbor Township, are invalid and of no legal force and effect. Counsel filed a joint stipulation of facts in connection with cross-motions for summary judgment. The court finds there are no genuine issues as to any material facts; therefore, the matter is ripe for summary judgment under R. 4:46-2 and the standards set forth in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146(1995).
The stipulated facts are as follows:
1. For tax year 1996, Block 325.200, Lot 15.02 was assessed at $296,800 and Block 325.200, Lot 15.03 was assessed at $298,000.
2. Taxpayer appealed these assessments to the Ocean County Board of Taxation which, by judgments dated September 12, 1996, reduced the assessments on Lots 15.02 and 15.03 to $70,000 and $76,000, respectively.
3. Municipality appealed these judgments to the Tax Court on or about October 11,1996 under docket number 008461-96.
4. Prior to February 1, 1997, pursuant to N.J.S.A. 54:3-38.1, the tax assessor forwarded to taxpayer a Notice of Property Tax Assessment for 1997, assessing Lots 15.02 and 15.03 at $70,000 and $76,000, respectively.
5. Neither party appealed the real property tax assessments for the 1997 tax year.
6. On May 16,1997, the Tax Court entered a judgment in regard to municipality’s appeal of the county board determination for the subject properties for tax year 1996, increasing the assessments on Lots 15.02 and 15.03 from $70,000 and $76,000 to $255,000 and $205,000, respectively.
7. On August 29, 1997, taxpayer received a tax bill for the third and fourth quarters of 1997, upon which the tax assessor made manual adjustments, based on the 1996 Tax Court Judgment, increasing the assessments for tax year 1997 on Lot 15.02, from $70,000 to $255,000, and Block 325.200, Lot 15.03, from $70,000 to $205,000, and the taxes due on such properties. No notice of any change in assessment was provided to taxpayer prior to receipt of the tax bill.
Taxpayer’s complaint contesting the actions of the municipal official was appropriately and timely filed in the Tax Court on October 7, 1997. N.J.S.A 2B:13-2 and -3, 54:51A-9(c); R. 8:4-1, 4:69-6. Athough not contained in the stipulation of facts, on June 30, 1997, taxpayer filed an appeal of the Tax Court’s decision *442 regarding the 1996 tax assessments, which is pending in the Appellate Division under docket number A6130-963.
Taxpayer asserts that there is no authority to support the assessor’s actions in changing the 1997 assessments for the subject properties independent of the county board and, alternatively, such changes would be invalid because of the assessor’s failure to provide proper notification of change in assessment in accordance with N.J.S.A 54:4-38.1. The municipality asserts that the corrections made by the tax assessor for the 1997 tax year were warranted and done in compliance with the Freeze Act, which attached to the 1996 Tax Court judgment, pursuant to N.J.SA 54:51A-8. The municipality further submits that, since taxpayer was aware of the county board judgment, the assessor’s failure to provide a notice of change in assessment was a mere “defect in form” which is excused under N.J.S.A 54:4-58.
The arguments advanced by the municipality misconstrue the assessor’s authority and the express purpose of the Freeze Act. The assessor was under no legal obligation to assess the subject properties for the 1997 tax year at the values determined by the county board for 1996. The “Freeze Act” relevant to county board judgments states in pertinent part:
Where no request for review is taken to the Tax Court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date____
IW./.S.A 54:3-26 (emphasis added)].
Since the municipality appealed the 1996 county board judgments to the Tax Court, the assessor was not bound by the foregoing provisions of the Freeze Act. Pursuant to N.J.SA 54:4-35, the assessor had until January 10,1997, to set the assessments on the subject properties based on what he determined was their taxable valuation as of October 1,1996, which could have been the original 1996 assessments or some other amount. For some reason, the assessor elected to assess Lot 15.02 and 15.03 for the 1997 tax year at the amount of the county board judgments of *443 $70,000 and $76,000, respectively, even though these figures were significantly lower than the prior year’s assessments.
If the assessor subsequently concluded that he had erred in carrying forward the 1996 County Board Judgment figures, he could have requested a revision and correction of the 1997 tax list under the direction and supervision of the county board pursuant to N.J.SA 54:4-46, which provides:
Upon the filing of the assessment lists and duplicates by the assessors ■with the county board of taxation, the board shall meet for the purpose of examining, revising and correcting the tax lists and duplicates. Any assessor shall attend before the board at such time and place as it may direct, and shall, under the direct,ion and supervision of the board, make up and prepare corrected tax lists and duplicates.
[emphasis added!
There is no indication that the assessor requested, or that the county board directed the assessor to make, the changes in the 1997 assessments at issue for the subject property. When this statute is read in pari materia with N.J.SA 54:4-55, which provides that after the county board of taxation delivers the corrected, revised and completed duplicates to the collectors of the various taxing districts by June 3 in each year, “neither the assessor nor the collector shall make or cause to be made any change or alteration in the tax duplicate except as may be provided by law,” it is apparent that the assessor did not have the authority under these statutes to make the changes to the 1997 assessments after he had submitted his tax assessment list to the county board by January 10,1997. N.J.S.A 54:4-35.
Had the municipality felt “discriminated against by the assessed valuation” of the subject properties placed on the books by the assessor for the 1997 tax year, as it presumably did in view of its appeal of the 1996 county board judgments, the governing body could have authorized the municipal solicitor to file an appeal of these assessments to the county board by April 1, 1997, pursuant to N.J.S.A. 54:3-21. Failure of the municipality to file a timely appeal of the 1997 tax assessments is a fatal jurisdictional defect, and, in the absence of an appeal by the taxpayer, constituted a waiver of the municipality’s right to litigate the 1997 assess *444 ment. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 425, 495 A.2d 1313 (1985).
Counsel for the municipality contends that it is inconsequential that no appeal was filed for the 1997 tax year since that assessment would be superseded by operation of law by a freeze of the Tax Court judgments for the 1996 tax year. The Freeze Act, N.J.S.A. 54:51A-8, states as follows:
Where a final judgment has been rendered by the tax court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. ...
According to the municipality, once judgment was entered by the Tax Court, the assessor was bound to apply the judgment amount to the 1997 tax year, even though it meant significantly increasing the assessment that had been placed on the books by the assessor for the 1997 tax year, without an appeal having been filed by the municipality contesting such assessment. Such a result flies in the face of the express purpose of the Freeze Act.
Our Supreme Court in City of Newark v. Fischer, 8 N.J. 191, 84 A.2d 547 (1951) articulated the purpose of the Freeze Act.
The evil which the ‘freeze’ statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.
[.Id. at 199-200, 84 A.2d 547.]
It is well settled law that “the very ‘raison d’etre’ of the Freeze Act is ‘the protection of the taxpayer, not the municipality.’ Borough of Hasbrouck Heights v. Division of Tax Appeals, 41 N.J. 492, 499, 197 A.2d 553 (1964).” Grandal Enters. Inc. v. Keansburg, Bor., 292 N.J.Super. 529, 540, 679 A.2d 193 (App.Div. 1996). Thus, the Freeze Act may be invoked solely upon the request of the taxpayer, not the municipality, notwithstanding that the taxpayer did not file an appeal of its assessment for the freeze year. Id. at 537, 679 A.2d 193. Absent changes in value occurring after the assessment date, such Freeze Act relief will be granted upon exhaustion of the appeal period. See Tamburelli *445 Properties Ass’n. v. Cresskill Bor., 308 N.J.Super. 326, 336-37, 705 A.2d 1270 (App.Div.1998); Brae Assocs. do Hertz Realty v. Park Ridge Bor., 17 N.J.Tax 187 (Tax 1998). In this case, where the assessor chose to set the 1997 assessments at $70,000 and $76,000, there would be no logical reason for the taxpayer to invoke a freeze of the 1996 Tax Court judgments and thereby significantly increase his tax burden for 1997. Thus, the changes made by the tax assessor were not done in compliance with N.J.S.A. 54:51A-8.
As the assessor did not have the authority to change the 1997 assessments, there is no need for the court to address the other issues raised by counsel. It should be noted, however, that an assessor has no involvement in the payment of taxes and no authority to make any changes to the tax bill. After delivery of the tax duplicate, the tax collector, not the assessor, is entrusted with “preparing, completing, mailing or otherwise delivering tax bills to the individuals assessed” and all payments are made to the office of the tax collector. N.J.S.A. 54:4-64. In fact, even when a Freeze Act judgment is issued by the court, a copy is sent to both the assessor and collector of the taxing district, so that each may independently revise his or her records. The assessor makes a notation on the property record card maintained in his or her office. The collector calculates the tax refund and the overpayment is either remitted to the taxpayer or is credited to the taxpayer’s account.
The court will direct the entry of a judgment declaring that the increases in the assessments made by the tax assessor to the subject properties for the 1997 tax year are invalid and of no legal force or effect. As such, the assessments for the 1997 tax year remain as originally determined by the assessor at $70,000 and $76,000 for Block 325.200, Lots 14.02 and 15.03, respectively. The court is not making a determination as to value.