EVERS, J.T.C.
The Borough of Elmwood Park (borough) has moved to dismiss the second count of the two complaints filed against it and the City of Garfield by Central Bergen Properties (Central) in which Central seeks a reduction in the assessments levied for 1983.[1] The property, although located in two taxing districts, is contiguous and operated as a single economic unit. Borough contends that Central is precluded from bringing these actions by virtue of the terms of a settlement agreement for prior years pursuant to which judgment was entered.
The settlement of tax appeals for 1980, 1981 and 1982, which settlement was placed on the record in November 1982, in its pertinent part provides that the provisions of N.J.S.A. 54:51A-8 (Freeze Act) would apply to all parties. That act states:
Where a final judgment has been rendered by the Tax Court involving real property the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment *497 year and for the two assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where those changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for the appeal. However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
By its terms the provisions of the act are binding on the taxing district for the year in question plus the two succeeding years absent a change in value or a revaluation. However the provisions are optional with respect to the taxpayer who may still seek further relief by way of an appeal in either or both of the freeze years. In settling the 1980, 1981 and 1982 cases, however, taxpayer agreed to be bound by the act and thereby relinquished its rights to appeal in 1983 and 1984. But for this agreement by the taxpayer, borough would not have agreed to the settlement. By way of a subsequent modification of the agreement, however, the taxpayer, if it so chose, was permitted to proceed against Garfield in either or both freeze years. Borough was not a party to that modification. Judgment was entered in December 1982. The property was sold in April 1983 and the purchaser (Central) instituted this action.
Central opposes the motion on the grounds that it was not a party to the settlement agreement, which, it argues, rises to no greater heights than a contract which is binding only on those who are parties thereto. It argues that under the circumstances there would have been no reliance by borough on any representations made by the instant taxpayer or, for that matter, on any representations made by the former owner because the freeze statute mandates, absent a change in value or a revaluation, that a taxing district honor the base year judgment for the next two successive years. That latter argument misses the point. The agreement did not call for borough to relinquish any rights; quite to the contrary it was the taxpayer who gave up its rights; it gave up its option to contest the assessment in 1983 and 1984. As already noted borough did change its position by agreeing to not contest the 1980,1981 *498 and 1982 matters provided Central agreed to not appeal the frozen assessments for 1983 and 1984.
The purpose of the Freeze Act is to avoid the expense and the harassment visited on taxpayers who, without the benefits of the act, would have to file annual appeals notwithstanding a successful appeal in the preceding years. See Newark v. Fischer, 8 N.J. 191, 199, 84 A.2d 547 (1951). Obviously borough sought the same protection and wanted to settle the case for five years and not just for the three years then pending. In effect the agreement made the Freeze Act a two-way street.
Additionally, Central claims that the settlement agreement does violence to the spirit and intent of the statute in that the statute only binds the taxing district from raising an assessment after a final judgment has been entered on an appeal but specifically does not bind the taxpayer from making further future appeals. Therefore Central argues that should a taxpayer and a taxing district agree to something more than that provided for by the statute, they may bind only each other in that fashion.
That argument has already been answered. Borough gave up nothing. Had borough sought to bargain away its statutory obligation to all other taxpayers by agreeing to the freeze notwithstanding a revaluation or change in value, the settlement agreement would never have received court approval. Again it must be emphasized that it was the taxpayer who freely agreed to the binding effect of the freeze and I know of no authority, nor has any been cited to me, that prevents a taxpayer from so doing.
The real, and only remaining, issue is whether the settlement, and specifically that portion binding the taxpayer to the Freeze-Act provisions, is binding on a successor in interest.
To adopt taxpayer’s position and to carry its argument to its logical conclusion would require a court to upset all settlement agreements concerning tax appeals that speak to the future *499 where the property is conveyed during the years contemplated in the agreement. Through the mere expedient of recording a deed a court approved settlement would be set aside, the judgment vacated and the entire matter reopened which, in this case, would involve a trial of the 1980,1981 and 1982 matters in which that plaintiff no longer has any interest. Not only could a taxpayer employ such a method to defeat a settlement in which it agreed to be bound by the freeze but a taxing district, against whom the freeze operates in any event, could circumvent the statutory mandate by setting up the defense of a conveyance. In that circumstance even a bona fide purchaser who seeks the freeze would be deprived of its benefits. In adopting that position the court would be usurping the power of the Legislature by creating a third exception to the Freeze Act.
Although not presented by Central, it may be argued that the change in value exception should apply to the taxpayer as well as to the taxing district. It would follow that by filing its 1983 complaint contesting the assessment Central is claiming a change in value. That argument has already been answered in that it was that very eventuality that the taxpayer bargained away in entering into the settlement agreement. Without relinquishing that right there would have been no settlement. Any agreement that could be avoided by either party in the event of a change in value would be valueless.
There are additional important reasons for upholding the agreement in granting borough’s motion. At the time of the settlement agreement (November 1982) Central was a purchaser under contract. That fact, as well as the fact that Central objected to the settlement, was clearly established at oral argument and in Central’s counsel’s certification. R. 4:33-1 provides:
Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
Clearly Central, as a purchaser under contract, had an interest in the property when the settlement was agreed to. Clearly the *500 disposition of the action, as a practical matter, would impair or impede its ability to protect that interest. By virtue of its objections to the settlement it is clear that its interests were not adequately protected by the existing parties. Notwithstanding this situation, however, except for voicing its objection to its predecessor, it did nothing when it could have and should have otherwise acted.
The settlement of litigation ranks high in our public policy. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35, 134 A.2d 761 (1957); Carlsen v. Carlsen, 49 N.J.Super. 130, 136, 139 A.2d 309 (App.Div.1958). Of course the enforcement of settlement agreements is subject to the discretion of the court. Judicial discretion has been defined in Smith v. Smith, 17 N.J.Super. 128, 85 A.2d 523 (App.Div.1951):
[As] the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case. 23 Words & Phrases 278; Brandon v. Board of Commissioners of Town of Montclair, 124 N.J.L. 135 [11 A.2d 304] (Sup.Ct. 1940); affirmed 125 N.J.L. 367 [15 A.2d 598] (E. & A. 1940); Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620 [33 A.2d 855] (E. & A. 1943); Hoffman v. Maloratsky, 112 N.J.Eq. 333 [164 A. 260] (E. & A. 1933). [at 132, 85 A.2d 523]
Again in Kupper v. Barger, 33 N.J.Super. 491, 111 A.2d 73 (App.Div.1955) it was said:
It is undoubtedly the policy of our courts to presume unless the contrary appears that a stipulation entered into by the attorneys in open court respecting the terms of the settlement of the pending action is authorized by their clients. Bernstein & Loubet, Inc. v. Minkin, 118 N.J.L. 203, 191 A. 733 (E. & A. 1937). Assuredly such stipulations and their enforcement are subject to the sound discretion and control of the court. Howe v. Lawrence, 22 N.J.L. 99 (Sup.Ct. 1849); Hygrade Cut Fabric Co. v. United States Stores Corp. 105 N.J.L. 324, 144 A. 605 (E. & A. 1929); Martin v. Lehigh Valley R.R. Co., 114 N.J.L. 243, 176 A. 665 (E. & A. 1935). [at 494, 111 A.2d 73]
At the time of the agreement Central’s predecessor had title to the premises and thus it cannot be argued that it was not a proper party to the agreement. It is noted, also, that the October 1, 1982 assessing date for the 1983 tax year had already passed. It is further noted that settlement negotiations, known to Central, were ongoing. The settlement was *501 completed in open court. Judgment was entered accordingly. All parties were ably represented by competent counsel. There was nothing to suggest that the settlement was not authorized by all parties having an interest in the proceedings. Under the circumstances I find it would be an abuse of discretion to upset the settlement agreement. If Central was truly aggrieved by the terms of the settlement it may well be that it should have looked to its seller for a remedy. In any event it cannot now be heard to complain against borough.
The motion is granted and the second count of each complaint will be dismissed.