PIZZUTO, J.T.C.
This matter presents the question of whether the purchaser of real property is bound by an agreement made between the seller and the taxing district, as part of the settlement of a tax appeal, to stabilize the assessed valuation of the property under the Freeze Act (N.J.S.A. 54:51A-8). The agreement at issue was made after the transfer of the property, which occurred during the year covered by the appeal.
The property is an office building located at 6-10 Forest Avenue in Paramus Borough and designated as Block 1411, Lot 7. A tax appeal for 1996 was taken in the name of Allied Securities Company (hereinafter “Allied”). This appeal was settled between Allied and Paramus by a stipulation of settlement executed by the parties in March 1997, and judgment reflecting the settlement terms was entered on May 30, 1997. The settlement provided for a reduction in the property’s assessment for 1996 from $8,500,000 *212 to $6,500,000. It further provided for the Freeze Act to apply conclusively for 1997 and the judgment recited:
The provisions of N.J.S.A. 54:51A-8 (Freeze Act) shall be applicable for the year(s) 1997 (Freeze Act year's). This judgment is a final disposition of the entire controversy and of any actions pending or hereafter instituted by the parties concerning the assessment on the property referred to herein for said Freeze Act year(s). No Freeze Act year shall be the basis for application of the Freeze Act for any subsequent year.
The Freeze Act, subject to certain exceptions, operates to continue the effect of a Tax Court judgment for a given year (usually termed the “base” year) for up to two succeeding years (the “Freeze Act years”). See generally Northvale Bor. v. Director, Div. of Taxation, 17 N.J.Tax 204 (1998), aff'd, 324 N.J.Super. 518, 736 A.2d 529 (App.Div.) certif. denied, 161 N.J. 147, 735 A.2d 572 (1999). The taxpayer may, however, either waive the benefit of the Freeze Act or choose to seek a further reduction for the subsequent years. Id. at 208. If the taxpayer elects the protection of the Freeze Act as a final disposition for a Freeze Act year, the base year judgment becomes determinative for that year. Accordingly, the language appearing in the 1996 stipulation and judgment would, if enforceable, conclusively fix the 1997 assessment of the subject property at $6,500,000 and foreclose further litigation over that assessment.[1]
The property had, however, been sold by Allied on or about November 15, 1996, to Zohar Zisapel (hereinafter “Zisapel”), who filed a petition with the Bergen County Board of Taxation to seek a reduction of the 1997 assessment below $6,500,000. The board affirmed the assessment and this action was then filed. The Tax Court action was dismissed without prejudice under R. 4:23-5 for failure of plaintiff to answer interrogatories and later reinstated under the same rule. Following reinstatement, Paramus moved to *213 dismiss Zisapel’s 1997 action as foreclosed by the settlement agreement with Allied in the 1996 action. In light of potential claims against Allied by either Paramus or Zisapel, depending on the outcome of the motion, Allied was permitted to participate, and has aligned itself with Zisapel in opposition to the motion.
Paramus relies primarily on Liva Group, L.L.C. v. Paramus Bor., 17 N.J.Tax 609 (App.Div.1998) and Central Bergen Properties v. Elmwood Park Bor., 6 N.J.Tax 495 (1984). In each of those cases, a provision of a stipulation of settlement in a tax appeal for a given year conclusively applying the Freeze Act for a later year was held to be binding on a subsequent owner of the property so as to preclude further litigation over the later year’s assessment. In each case, the settlement agreement was executed before transfer of title and after the valuation date for the Freeze Act year. In Liva Group the conveyance occurred several days before entry of the Tax Court judgment reflecting the terms of the stipulation, while in Central Bergen Properties the conveyance occurred four months after the judgment.
In this matter, as noted, the property had been sold four months before the stipulation was executed. Zisapel argues that this is a decisive distinction. While not disputing Allied’s authority to conclude a settlement fixing the 1996 assessment,[2] Zisapel contends that Allied, after the sale of the property, had no interest in the 1997 assessment and no capacity to foreclose litigation by Zisapel over that assessment. Allied now supports this proposition and is prepared to address the consequences, if Paramus (in the event the motion to dismiss the 1997 action is denied) seeks relief against Allied. The contract for sale of the property and the conduct of the parties to the contract give conflicting indications of their understanding concerning the tax appeal. The contract recites that the “purchaser shall continue” the pending tax appeal and account to the seller for its share of any refund, but in *214 actuality the seller concluded the appeal and presumably accounted to the purchaser.
The issue to be determined in this matter may be conceptualized as whether the authority to consent to the conclusive application of the Freeze Act for 1997 is an incident of the control of litigation for the base year (which the parties do not dispute was held by Allied) or whether it is an incident of ownership of the property and passed to Zisapel with title. If it is an incident of control of the base year litigation, further questions may arise concerning the duties of buyer and seller, and the conduct and knowledge of the parties to the tax appeal. When the issue is examined in light of general principles, the purpose of the Freeze Act, and practical consequences, the sounder conclusion is that the authority is an incident of ownership or other status as taxpayer[3] with respect to the Freeze Act year and not of control of base year litigation.
In terms of general principles, it is entirely appropriate to conclude that a party which no longer has an interest in property has no capacity to bind its successor by agreement with the taxing district concerning the assessment of the property for a year subsequent to the sale. There is no suggestion that such a party could make an agreement enforceable against the successor fixing an assessment at some figure not determined in a base year judgment, as if the stipulation between Allied and Paramus had recited an assessment for 1997 other than $6,500,000. The lack of interest or authority of Allied to make that agreement is clear. It is a particular instance of the principle that one cannot dispose of or affect a subject in which one no longer has an interest.
The result is totally consistent with Liva and Central Bergen Properties in that in each instance the purchaser takes the proper *215 ty subject to such agreements with the taxing district concerning later tax years as were made by the seller before the conveyance. One takes subject to the acts of one’s predecessor, during the time of the predecessor’s interest, but thereafter is unaffected by them as to the interest taken. See also ADP of N.J., Inc. v. Parsippany-Troy Hills Tp., 14 N.J.Tax 372 (1994). Although Paramus argues that it may rely on the authority of the attorney who signed the stipulation, the issue is not the authority of that attorney to act for the client, but the client’s own authority. Cf. Seacoast Realty Co. v. West Long Branch Bor., 14 N.J.Tax 197 (1994).
 Under the Freeze Act, a judgment for the base year may come to have effect also for subsequent years. The purposes of the Act, however, do not require the conclusion that control of the taxpayer’s claim for the base year carries with it authority to consent to conclusive application of the base year judgment for the Freeze Act years. The fundamental purpose of the Freeze Act is to protect the taxpayer from repeated litigation in later years, once a reduction has been achieved. Hasbrouck Heights Bor. v. Division of Tax Appeals, 41 N.J. 492, 197 A.2d 553 (1964); Grandal Enterprises, Inc. v. Keansburg Bor., 292 N.J.Super. 529, 679 A.2d 193 (App.Div.1996); Central Bergen Properties v. Elmwood Park Bor., supra. The interest of the taxing district in avoiding subsequent litigation over further reduction is at best a collateral concern in the interpretation of the Freeze Act. When the taxing district’s interest under the Freeze Act conflicts with that of the taxpayer, the taxpayer’s interest should be paramount.
Since the taxpayer for 1997, Zisapel, does not wish to avoid further litigation, it is consistent with the Freeze Act to conclude that authority to consent to the conclusive application of the Act is not an incident of control of the base year litigation. Certainly, if base year litigation ended before transfer of title without reference to the Freeze Act, a subsequent purchaser would not need his vendor’s consent to invoke the Freeze Act for a year that began after the transfer. See ADP of N.J., Inc., supra, 14 N.J. Tax at 378. It would be anomalous to reach a different result and *216 require the vendor’s consent where the base year litigation has not ended before the transfer. Yet this seems to be the logic of the taxing district’s position.
Practical considerations also support the conclusion that a party to base year litigation who has no interest in the property for a potential Freeze Act year lacks authority to consent to conclusive application of the Freeze Act for that year. Status sufficient to confer standing to contest an assessment is easily demonstrated by deed, lease or other means. To require the taxing district to obtain assurance at the time the stipulation is executed as to the continuation of that status in a Freeze Act year, if it wishes to deal conclusively with that year in the stipulation, imposes no great burden on either party to the base year litigation. In the event that an interest has been transferred and it has been agreed, however improbably, that the transferor retains authority over the Freeze Act years, that fact may be taken into account. On the other hand, if enforceability of the Freeze Act term depends, not on the actual litigant’s status, but on other questions, the inquiry is much more difficult. It has been suggested in this ease, for example, that Paramus was on notice of Zisapel’s acquisition of the property at the time the stipulation was signed and, therefore, that reliance on Allied’s authority was misplaced. Inquiry into that issue or others is unnecessary, if Allied’s status is determinative.
Since Allied had no interest in the subject property for 1997 at the time the stipulation was executed, its consent to the conclusive application of the Freeze Act for that year is ineffective. The consequences of this determination as between Allied and Para-mus are not presented in this application and therefore not addressed. The present decision is limited to Paramus’s motion to dismiss Zisapel’s 1997 appeal, which is denied.

 The stipulation was silent as to 1998, although that year also could qualify as a Freeze Act year. As of the date of the stipulation, however, it could not be determined whether exceptions to the Freeze Act might emerge before the valuation date (October 1, 1997) prescribed by NJ.S.A. 54:4-23 for the 1998 tax year. Only after the valuation date can a conclusive application of the Freeze Act be made. Cf. Northvale Bor. v. Director, Div. of Taxation, supra, 17 N.J.Tax at 213, note 2.

 Sea Mobil Admin. Serv. Co. v. Mansfield Tp., 15 N.J.Tax 583 (1996), aff'd, 17 N.J. Tax 509 (App.Div.1997), for an instance of conflict between buyer and seller over control of a tax appeal for the year in which the property was sold.

 N.J.S.A. 54:3-21 provides that an assessment may be contested by a "taxpayer.” In certain instances, a taxpayer may not be the owner of the property. The most common instance is that of a tenant required by lease to pay property tax. See Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987)